913 So.2d 1003 (2005)
BRYAN FOODS, INC., Appellant
v.
James David WHITE, Appellee.
No. 2004-WC-00357-COA.
Court of Appeals of Mississippi.
April 19, 2005.
Rehearing Denied July 26, 2005.
Certiorari Denied October 27, 2005.
*1005 James C. Helveston, West Point, attorney for appellant.
Roger K. Doolittle, Jackson, attorney for appellee.
Before BRIDGES, P.J., GRIFFIS and ISHEE, JJ.
GRIFFIS, J., for the Court:
¶ 1. James David White injured his neck while working at Bryan Foods, Inc. The Mississippi Workers' Compensation Commission found that White had sustained a work-related injury resulting in a fifty percent loss in his wage-earning capacity. The Clay County Circuit Court affirmed the Commission's decision. We find substantial evidence to support the Commission's decision and affirm.

FACTS
¶ 2. James White was hired by Bryan Foods in 1977 as a certified diesel mechanic. White performed heavy labor including the overhauling of engines, transmission repairs and work on the cooling units of refrigerated trucks until 1998.
¶ 3. The first injury occurred on May 30, 1995. While attempting to pry an engine open, the tire tool slipped and injured White's right elbow. Bryan Foods accepted the compensability of this claim and provided medical treatment. Dr. Russell Linton, an orthopedic surgeon, treated White's elbow injury in November of 1995, and released him to work in January of 1996. Due to flare-ups from the injury, White reported to Dr. Linton in May, *1006 June, and July of 1996. Thereafter, Dr. Linton restricted White to light duty for six weeks. White returned to his full work responsibilities in September of 1996.
¶ 4. White alleged that a second work-related injury occurred on November 27, 1996. White testified that when he attempted to pull a large tire from an eighteen-wheeler he felt an immediate pain in his neck. White did not immediately report the incident to his supervisor or the company nurse since he thought that it was merely a "crick in his neck." After seeing White apply pain medication to his neck, Roby White, his direct supervisor, asked White what was wrong. White told his supervisor that he had a "crick in his neck," but did not relate the pain to any specific cause. Several days later, White approached the company nurse complaining of the same "crick." The nurse told White that his neck pain could not possibly be related to his work, and Bryan Foods would not compensate him.
¶ 5. White sought treatment for his injury from several physicians. Relying on the opinion of Bryan's nurse, White testified that he did not report the accident to any of his treating physicians. White first went to his family physician, Dr. Sue Simmons, on December 5, 1996. After examining White, Dr. Simmons referred White to Dr. Linton.
¶ 6. On December 20, 1996, White told Dr. Linton about his neck and shoulder pain. White told Dr. Linton that he had been experiencing these pains for approximately one month, again failing to report a work-related accident as the cause of his injury. Dr. Linton diagnosed White's condition as a cervical radiculopathy and referred him to Dr. Thomas McDonald, a neurosurgeon.
¶ 7. Dr. McDonald first treated White on December 27, 1996. White reported neck and shoulder pains existing since Thanksgiving but again was unable to specify a cause. Dr. McDonald diagnosed a ruptured C-4 disc and a bulging disc at C6-7. Surgery was immediately performed on White. After his recuperation, White was released to work by Dr. McDonald on March 3, 1997. White consulted Bryan's nurse again when he returned to work regarding the cause of his injury. The nurse told White that his injury could not have been work-related and that he would have had to have "fallen from a two-story building to mess [his] neck up."
¶ 8. One year later, Dr. McDonald again treated White. In March of 1998, White's condition was reevaluated due to further complaints of neck and shoulder pain. Dr. McDonald recommended a second surgery. Dr. McDonald performed the second surgery on March 10, 1998. White was released to full and unrestricted duty on July 27, 1998.
¶ 9. After returning to his mechanic duties, White testified that his condition did not improve. White returned to Dr. Simmons who referred him to a second neurosurgeon, Dr. Robert Ray Smith. Dr. Smith evaluated White's condition and ordered a Functional Capacity Evaluation ("FCE"). Due to the results of the FCE, Dr. Smith determined that White had reached maximum medical improvement and had incurred a twenty percent medical impairment. Dr. Smith imposed a sixty pound lifting restriction and restricted White to medium duty.
¶ 10. Given White's inability to return to work as a mechanic, he sought alternate employment. White testified that he made seventeen unsuccessful attempts to secure a new job in October and November of 1999. Unable to find new employment, White was assigned by Bryan Foods to Weiner World as a maintenance technician. The new position required White to *1007 work in refrigerated areas with extremely cold temperatures that required him to wear heavy coats provided by Bryan Foods. White testified that the heavy coats aggravated his neck injury.
¶ 11. In May of 2000, White sought treatment from Dr. Smith. White complained of neck pain aggravated by wearing the heavy coats. After his examination, Dr. Smith found White to be in good strength without any neurological deficits. Dr. Smith's ultimately opined that White's condition had not deteriorated. Although no objective evidence existed, due to White's subjective complaints, Dr. Smith recommended that White be assigned to light duty outside of the cold temperatures.
¶ 12. White returned to Dr. Smith in August of 2001. White's complaints were the same. White complained that having to work nine hours a day in such a cold environment aggravated his neck injury. Dr. Smith further restricted White to an eight hour workday with no work in the freezer areas or any cold environments. Ultimately, in 2001, White left Weiner World, citing his physical inability to perform the work as grounds.
¶ 13. After White's departure from Weiner World, Bryan Foods offered him another job. The position was in the lard room trimming ears and pulling tongues from hog carcasses. He did not attempt these jobs because the required tasks exceeded his FCE restrictions. White testified that he would attempt to perform any job Bryan Foods offered if the job was within the FCE restrictions
¶ 14. The claims based on White's 1995 elbow injury and his 1996 neck injury were consolidated for trial. Prior to trial, the parties stipulated the following:
1. On May 30, 1995, White sustained an injury to his right elbow within the course and scope of his employment at Bryan Foods.
2. White's average weekly wage for the twelve month period prior to the 1995 injury was $561.84.
3. White's average weekly wage for the twelve month period prior to the 1996 injury was $497.97.
¶ 15. The administrative law judge found that White had sustained a neck injury while on the job and awarded benefits. The administrative law judge found that White experienced a 50% loss of wage earning capacity. He was entitled to various disability benefits for the period between November 27, 1996 and July 27, 1998, and all medical services and supplies required during his recovery. This award was affirmed by the Commission and the Clay County Circuit Court. Bryan Foods appeals.

STANDARD OF REVIEW
¶ 16. An appellate court must defer to an administrative agency's findings of fact if there is even a quantum of credible evidence which supports the agency's decision. Hale v. Ruleville Health Care Center, 687 So.2d 1221, 1224 (Miss.1997). "This highly deferential standard of review essentially means that this Court and the circuit courts will not overturn a Commission decision unless said decision was arbitrary and capricious." Id. at 1225; Georgia Pacific Corp. v. Taplin, 586 So.2d 823, 826 (Miss.1991).
¶ 17. The supreme court has held:
We do not sit as triers of fact; that is done by the Commission. When we review the facts on appeal, it is not with an eye toward determining how we would resolve the factual issues were we the triers of fact; rather, our function is to determine whether there is substantial *1008 credible evidence to support the factual determination by the Commission.
South Central Bell Telephone Co. v. Aden, 474 So.2d 584, 589 (Miss.1985). Stated differently, this Court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of evidence. Myles v. Rockwell Int'l., 445 So.2d 528, 536 (Miss.1984) (citing Masonite Corp. v. Fields, 229 Miss. 524, 91 So.2d 282 (Miss.1956)); Riverside of Marks v. Russell, 324 So.2d 759, 762 (Miss.1975). An appellate court may not simply reweigh the evidence and substitute its decision for that of the Commission. Indeed, this Court has a duty to defer to the Commission when its decision can be supported. Fought v. Stuart C. Irby, Co., 523 So.2d 314, 317 (Miss.1988).

ANALYSIS

I. Whether the Order of the Mississippi Workers' Compensation Commission is supported by substantial evidence.
¶ 18. To establish entitlement to benefits under workers' compensation, the claimant bears the burden of proving by a preponderance of the evidence each element of the claim of disability. Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 13 (Miss.1994). Therefore, White must prove that: (1) an accidental injury occurred, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the claimed disability. Id. at 13.
¶ 19. Bryan Foods argues that the substantial evidence does not support White's claim of a work-related injury. We must consider the Commission as the ultimate fact finder. South Central Bell Telephone Co., 474 So.2d at 589. The Commission, therefore, enjoys the presumption that it made proper determinations as to the weight and credibility of the evidence and its factual findings are binding on this Court, and the circuit court as a reviewing court, provided the findings are supported by substantial evidence. Fought, 523 So.2d at 317.
¶ 20. Mississippi courts have held that "substantial evidence" means something more than a "mere scintilla" of evidence, and that it does not rise to the level of "a preponderance of the evidence." Delta CMI v. Speck, 586 So.2d 768, 773 (Miss.1991). Thus, it may be said that substantial evidence "means such relevant evidence as reasonable minds might accept as adequate to support a conclusion." Id. at 773. We look to determine whether there was substantial evidence to support the Commission's determination.
¶ 21. The Commission found that White had sustained a compensable cervical disc injury on November 27, 1996, while performing his mechanic duties at Bryan Foods. However, Bryan argues that White could not have been injured on the job since he never reported the incident to Bryan Foods or his treating physicians. White had previously reported twelve injuries on the job. Bryan asserts that, given White's familiarity with Bryan's reporting procedures, his failure to report this injury is evidence that the injury was unrelated to his work.
¶ 22. Bryan asserts that of greater significance is White's failure to report a work-related injury to his treating physicians. Specifically, White told Dr. McDonald that he did not know of any accident. There is no recorded allegation of a work-related injury in White's complete medical history. Bryan Foods argues that, under Bechtel Corp. v. Phillips, 591 So.2d 814 (Miss.1991), White is bound to the history that he gave his treating physicians.
*1009 ¶ 23. Bechtel also involved a controversy of whether the claimant's injury was work-related. In Bechtel, the claimant alleged that he was injured at work but had stated in his medical history that the injury occurred at home. Id. at 815-16. Reversing the judgment awarding benefits to the claimant, the supreme court found that causation was not supported by substantial evidence and found for the employer. Id. at 818. The supreme court determined that he failed to meet his burden of proof and relied on his statements in his medical history, the absence of any co-worker's corroboration of the incident, and his failure to report any injuries to his employer. Id.
¶ 24. This case is clearly distinguishable from Bechtel. Unlike in Bechtel, White told his supervisor, Roby White, that he had injured his neck. Additionally, White informed Bryan's nurse of his injury asking if he should report the incident. Accepting the nurse's discouraging medical opinion, White did not report his injury to anyone else. Also, White never alleged his injury to have been caused by an event at home; rather, White consistently stated that he was unsure of the cause. Additionally, in Bechtel, there was no medical testimony that the claimant's injury occurred on the job. Here, the medical opinions were consistent in that White's condition was most likely work-related.
¶ 25. In Edwards v. Marshall Durbin Farms, Inc., 754 So.2d 556, 560(¶ 16) (Miss.Ct.App.2000), we held that "disability need not be proved by medical testimony as long as there is medical testimony which will support a finding of disability." Here, Dr. Simmons and Dr. Smith opined that White's attempt to "snatch off" a heavy truck tire could certainly have caused this injury. Finally, Drs. Simmons, Linton, Smith, and McDonald all agreed that even though a history of a work-connected injury was not presented, the evidence supported White's theory of injury.
¶ 26. Bryan Foods also argues that White has failed to meet his burden of proof to establish an industrial disability. "Industrial" or "occupational" loss is "the functional or medical disability as it affects the claimant's ability to perform the duties of employment." McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 166 (Miss.1991) (quoting Robinson v. Packard Elec. Div., Gen. Motors Corp., 523 So.2d 329, 332 (Miss.1988)). When determining loss of wage earning capacity, several factors must be considered by the reviewing court. Those factors are: (1) an increase in general wage levels, (2) increased maturity or training, (3) longer hours worked, (4) sympathy wages, (5) temporary and unpredictable character of post-injury earnings, (6) employee's inability to work, (7) employee's failure to be hired elsewhere and (8) the continuance of pain and other related circumstances. Guardian Fiberglass, Inc. v. LeSueur, 751 So.2d 1201, 1204-05(¶ 10) (Miss.Ct.App.1999). The determination must be made by evaluating the evidence as a whole. Id. at 1205(¶ 10). The burden is on the claimant to prove an industrial injury by showing medical impairment and that the medical impairment resulted in a loss of wage earning capacity. Richards v. Harrah's Entertainment, Inc. 881 So.2d 329, 332(¶ 7) (Miss.Ct.App.2004); Guardian, 751 So.2d at 1205 (¶ 10) (citing Miss.Code Ann. §§ 71-3-3(I), 71-3-17(c)(25) (Rev.2000)).
¶ 27. The medical testimony from White's treating physicians supports the permanence of White's disability. Dr. Smith testified by deposition that White had suffered a 20% permanent medical impairment to his entire body due to his injury. Dr. Smith restricted White to medium duty based on the FCE, the clinical *1010 examinations, the diagnostic tests, and White's complaints of pain. In April of 1999, White was further restricted to light duty. Dr. Simmons stated in her deposition that his work activities aggravated the pain, and that his condition improved when he was not working. Therefore, Dr. Simmons concluded that White would "never be able to return to duty without severe spasm." The record is clear that White is unable to return to his work as a diesel mechanic due to his injury.
¶ 28. We now examine whether there was a loss in wage earning capacity. The decision on loss of wage earning capacity is "largely factual and is to be left largely to the discretion and estimate of the Commission." Dunn, Vardaman S. Mississippi Workmen's Compensation § 68 (3d ed.1982). In finding a permanent loss of wage-earning capacity, the administrative law judge relied on the following evidence: (1) the nature of White's medical impairment; (2) the 20% medical impairment assessed by Dr. Smith; (3) the permanent work restrictions assessed by Dr. Smith on an eight hour work day, five days a week, exposure to cold temperatures, and work heavier than medium duty; (4) White's repeated, yet unsuccessful attempts to return to work and maintain employment at Bryan Foods; (5) White's employment search in 1999; (6) White's current ability to perform some work on his 200-acre cattle farm and to occasionally drive a dump truck owned by his wife; (7) his twenty-four year tenure with Bryan Foods; (8) White's work history almost exclusively as a mechanic, welder, and construction worker; (9) White's undisputed testimony that he cannot perform any of his prior jobs due to his permanent work restrictions; (10) White's educational level as a high school graduate; (11) White's age of forty-seven; and (12) White's geographic location. The administrative law judge also found White's testimony to be credible, trustworthy, and corroborated by other lay and medical evidence in the record.
¶ 29. After considering the evidence and the entire record, we are of the opinion that the Commission's award of permanent disability benefits was supported by substantial evidence. Therefore, finding no error, we affirm the Commission on this issue.

II. Whether the circuit court erred in affirming the Order of the Commission.
¶ 30. Bryan Foods makes a general argument that the circuit court erred in affirming the Commission's ruling. It is Bryan Food's contention that the Commission's findings were contrary to the weight of the evidence.
¶ 31. It has long been established that whether the evidence is sufficient is the only factual determination appellate courts have the right to decide. It is the duty of the circuit court to affirm the Commission's findings if they are supported by substantial evidence or are not manifestly wrong. Financial Institute Ins. v. Hoy, 770 So.2d 994, 997(¶ 6) (Miss.2000).
¶ 32. After considering the entire record, we conclude that the Commission had substantial evidence before it to support its findings. The Commission's findings were based on the medical records, the opinions of five competent physicians and the findings of various medical tests and procedures. The record supports the decision that White's neck injury was causally related to the 1996 accident at Bryan Foods and that White experienced a 50% loss of wage earning capacity. Therefore, we find no error in the decisions of the Commission or the Circuit Court of Clay County.
*1011 ¶ 33. THE JUDGMENT OF THE CIRCUIT COURT OF CLAY COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, BARNES AND ISHEE, JJ. CONCUR.