953 So.2d 296 (2007)
AIRTRAN, INC., and American Manufacturers Insurance Company, Appellants
v.
Pamela BYRD, Appellee.
No. 2006-WC-00674-COA.
Court of Appeals of Mississippi.
April 3, 2007.
*298 W. Bienville Skipper, Jackson, attorney for appellants.
Floyd J. Logan, attorney for appellee.
Before MYERS, P.J., IRVING and BARNES, JJ.
MYERS, P.J., for the Court.
¶ 1. On July 31, 1999, the claimant, Pamela Byrd, a ticket agent for AirTran at the Gulfport-Biloxi Airport, fell while assisting and loading luggage into the cargo hull of an aircraft. Byrd claimed injuries to the neck, right shoulder, left shoulder, left hip, and lower back and the onset of fibromyalgia and vascular necrosis due to the fall under the Workers' Compensation Act (Act). Byrd was awarded compensation by the administrative judge for injuries sustained to her neck, right shoulder and lower back. However, her left shoulder and left hip injuries and the conditions of fibromyalgia and vascular necrosis were held not to be compensable under the Act. The employer and carrier, AirTran and American Manufacturers Insurance Company (collectively referred to as "AirTran") appealed from the order, but the Commission affirmed, adopting the findings of the administrative judge. AirTran appealed the Commission's decision and the judgment was affirmed by the circuit court. AirTran now requests this Court to review the lower court's decision (1) finding Byrd's lower back injuries compensable under the Act[1] and (2) awarding permanent partial disability benefits. Finding no reversible error, we affirm the lower court decision holding Byrd's lower back condition compensable under the Act and awarding permanent partial disability benefits.

DISCUSSION
I. WHETHER THE COMMISSION'S DECISION FINDING THE CLAIMANT'S LOWER BACK CONDITION COMPENSABLE UNDER THE ACT IS SUPPORTED BY SUBSTANTIAL EVIDENCE?
¶ 2. We are charged with the duty of determining whether the Commission erred in finding that there was substantial evidence showing a causal connection between claimant's lower back injury and her work injury. We follow the direction of our supreme court in stating our standard of review,
This Court is bound by the decision of the Mississippi Workers' Compensation Commission if the Commission's findings of fact are supported by substantial evidence. . . . Stated differently, this Court will reverse the Commission's order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence. A finding is clearly erroneous when, although there is some slight evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made by the Commission in its findings of fact and in its application of the Act.
Barber Seafood, Inc. v. Smith, 911 So.2d 454, 461(¶ 27) (Miss.2005) (quoting Hardaway *299 Co. v. Bradley, 887 So.2d 793, 795 (Miss.2004) (citations omitted)).
¶ 3. The injured employee bears the general burden of proof of establishing every essential element of his or her claim by a preponderance of the evidence that: an accidental injury occurred arising out of and in the course of employment, a disability is suffered, and a causal connection between the work injury and the claimed disability exists. Bryan Foods, Inc. v. White, 913 So.2d 1003, 1008(¶ 18) (Miss.Ct. App.2005). The causal connection between the claimant's injury and disability must be proven with competent medical proof and based upon a reasonable degree of medical probability. Harrell v. Time Warner/Capitol Cablevision, 856 So.2d 503, 511(¶ 30) (Miss.Ct.App.2003); Howard Indus. v. Robinson, 846 So.2d 245, 252(¶ 49) (Miss.Ct.App.2002).
¶ 4. AirTran argues that the substantial evidence does not support the Commission's finding of a work-related lower back injury because none of Byrd's physicians connected Byrd's lower back pain with the injuries she sustained in the work accident of July 1999. Byrd, in turn, rebuts Air-Tran's argument, asserting that the Commission's decision finding her lower back injuries compensable was supported by substantial evidence. Byrd argues that substantial evidence was before the Commission regarding her lower back injury and, in support of her argument, points to the deposition testimony of her treating physician, Dr. Victor T. Bazzone, the office notes of her internist, Dr. Irene Koskan, and the deposition testimony of her treating physician, Dr. Butler.
¶ 5. We are to consider whether the Commission erred in its evaluation of the medical testimony causally relating Byrd's lower back condition to her work injury. In making our determination, this Court is to ask the following question: "From the whole of the doctor's testimony, what is the real substance he stated concerning causal connection?" Dixie Contractors, Inc. v. Ashmore, 349 So.2d 532, 534 (Miss. 1977) (quoting 3 A. Larson, The Law of Workmen's Compensation, § 80.32 (1976)). However, we are mindful that "[t]he compensation process is not a game of `say the magic word,' in which the rights of injured workers should stand or fall on whether a witness happens to choose a form of words prescribed by court or legislature." Dixie Contractors, Inc., 349 So.2d at 533. "What counts is the real substance of what the witness intended to convey. . . ." Id.
¶ 6. The record reflects that Byrd was first treated by Dr. Koskan shortly after she incurred her work injury, then she was referred to Dr. Bazzone and later treated by Dr. Butler. The administrative judge, in making her decision finding Byrd's lower back injuries compensable as a work-related injury, summarized several relevant portions of Byrd's medical records supportive of finding a causal connection. In her summarization, the judge gave specific attention to an office note of Dr. Koskan dated December 2000, which indicated that Byrd complained of low back discomfort. Further, the judge noted that the medical records of Dr. Bazzone indicate that Byrd reported problems in her "lower extremities" following her work injury. In her opinion, the administrative judge discussed the medical records of Dr. Bazzone and stated that Dr. Bazzone related Byrd's complaints to her sacroiliac joint which he treated with anti-inflammatories. However, we note that in Dr. Bazzone's deposition, he testified contradictorily that "[w]hen she first came to me, she had no complaints in the low back." He further stated, "[a]nd we had never studied that, and there was no need to study her low back." The administrative judge resolved this conflict of Dr. Bazzone's medical records *300 and deposition testimony in favor of Byrd, and found her lower back injuries to be causally related to her work injury.
¶ 7. Furthermore, the Commission had Dr. Butler's medical records and deposition testimony before it and found that Dr. James C. Butler's testimony was "probative and persuasive" in causally relating Byrd's lower back injury to her fall at work. Our review of the record indicates that Dr. Butler, in two depositions, causally related Byrd's lower back condition to her work injury. Byrd first presented to Dr. Butler on September 26, 2001, complaining of right shoulder and low back pain attributed to her work injury. In turn, Dr. Butler related the onset of Byrd's lower back pain to her work injury. AirTran takes issue with the fact that Dr. Butler's testimony on the matter was based on Byrd's subjective complaints to him relating her lower back pain to the fall she sustained at work. The argument follows that Dr. Butler's testimony regarding the causal connection should not be considered because it is based solely on the history Byrd provided to Dr. Butler and not on his treatment of Byrd.
¶ 8. When a physician bases his medical opinion on the subjective complaints of his patient, the patient's credibility then becomes the issue for determination by the Commission. Barber Seafood, Inc., 911 So.2d at 462 n. 5 (¶ 29). It is not the function of this Court to determine questions of credibility. Id. Here, the Commission relied heavily on the testimony of Dr. Butler in finding Byrd's lower back injuries to be compensable under the Act. In turn, Dr. Butler admitted to having formed his medical opinion that related the injury to the work accident based on the medical history provided to him by Byrd during treatment. In finding that there was a causal connection between Byrd's injury suffered at work and her lower back pain, the Commission implicitly found Byrd to be credible. Without indication to the contrary, we cannot overturn the Commission's finding of credibility.
¶ 9. We cannot reverse a decision of the Commission if there exists substantial supporting evidence. Our examination of the record leads us to the conclusion that the order of the Commission was adequately supported by competent substantial evidence. Dr. Butler specifically related Byrd's lower back injuries to her work injury and the Commission found this testimony "probable and persuasive" in awarding benefits based on this causation. The testimony of Dr. Butler relating the causation of the injury to the work injury, the medical records of Dr. Bazzone indicating Byrd's complaints concerning her lower extremities, and the office notes of Dr. Koskan reflecting Byrd's lower back complaints, taken together by the Commission, serves as substantial evidence in favor of finding Byrd's lower back injuries compensable under the Act. Accordingly, we affirm the finding of Byrd's lower back injury compensable under the Act.
II. WHETHER THE COMMISSION ERRED AS A MATTER OF LAW IN AWARDING THE CLAIMANT PERMANENT PARTIAL DISABILITY BENEFITS?
¶ 10. The Commission found that Byrd suffered permanent partial disability and a resulting loss of wage earning capacity due to her work-related injuries. In formulating the compensation award, the Commission found Byrd capable of employment in some capacity of sedentary employment at minimum wage. AirTran argues that the Commission erred in crafting the permanent partial disability award because Byrd did not offer proof substantiating her loss of wage earning capacity.
*301 ¶ 11. Compensation for a claimant who has suffered a permanent partial unscheduled member injury is controlled by Mississippi Code Annotated section 71-3-17(c)(25) (Rev.2000), that reads in pertinent part:
the compensation shall be sixty-six and two-thirds percent (66-2/3%) of the difference between his average weekly wages, subject to the maximum limitations as to weekly benefits as set up in this chapter, and his wage-earning capacity thereafter in the same employment or otherwise. . . .
In determining a claimant's loss of wage earning capacity, the Commission should take into consideration all of the factual elements presented to it in order to arrive at its conclusion regarding the extent of the claimant's disability. The Commission considers the employee's actual wages earned prior to the injury as compared to the employee's capacity to earn those same wages after the injury, as well as other factors such as the employee's age, education, training and work experience, and his or her ability to return to the same or other employment. DeLaughter v. South Cent. Tractor Parts, 642 So.2d 375, 379 (Miss.1994).
¶ 12. At the time of the hearing, Byrd was fifty-one years old. The Commission found that Byrd had obtained one year of college education and had been previously certified as a travel agent. Byrd's treating physicians had restricted Byrd's return to work and opined that she would only be able to perform light to sedentary physical labor. Further, the Commission noted that AirTran subsequently offered Byrd another position involving sedentary work, but that she refused this position because the job would require a transfer to the Atlanta office. Byrd's refusal to take the offered position in Atlanta was did not weigh against her, though, in the Commission's evaluation of her claim of loss of wage earning capacity. Byrd testified regarding her efforts to obtain other employment, providing that she pursued training as a damage estimator for Partnership for Response and Recovery, an organization affiliated with the Federal Emergency Management Agency. Byrd was placed on a call list for qualified estimators, but was never called to report. The Commission, based on the evidence before it, found Byrd capable of employment in some capacity of sedentary employment at minimum wage and awarded her permanent partial disability compensation accordingly.[2]
¶ 13. The Commission's specialization and experience make it better equipped than we are to analyze and translate evidence of a claimant's loss of wage earning capacity into findings of fact. We are to defer to the Commission's findings unless they are clearly erroneous or unsupported by substantial evidence. South Mississippi Electric Power Ass'n v. Graham, 587 So.2d 291, 294 (Miss.1991). We are mindful that the Commission has "considerable discretion and latitude" in determining a claimant's wage earning capacity. Moore v. Indep. Life & Accident Ins. Co., 788 So.2d 106, 114(¶ 33) (Miss.Ct.App. 2001). We find that Byrd's refusal to relocate to Atlanta was justifiable in these circumstances and should not weigh against her in determining her loss of wage earning capacity. In light of the *302 evidence of Byrd's physical condition and wage-loss factors, we find that there is substantial evidence to support the Commission's finding of permanent partial disability. Therefore, we affirm the decision of the lower court awarding Byrd compensation for permanent partial disability.
¶ 14. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING, C.J., LEE, P.J., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
NOTES
[1] AirTran does not contest the portion of the order awarding workers' compensation benefits for Byrd's injuries to her neck and right shoulder; therefore, our discussion concerning compensability is limited to the lower back injuries.
[2] We note that the claimant was found disabled by the Social Security Administration. However, regardless of the Social Security Administration's findings of disability, the claimant still has the duty of proving her claim and making attempts to seek employment to establish her loss of earning capacity. Dulaney v. National Pizza Co., 733 So.2d 301, 304 (¶ 8) (Miss.Ct.App.1998).