CARLTON, J.,
for the Court:
¶ 1. Gail Marie Anthony appeals the Lauderdale County Circuit Court’s judgment affirming the decision of the Mississippi Workers’ Compensation Commission (Commission), which denied workers’ compensation benefits to Anthony. We find substantial evidence to support the Commission’s decision and affirm.
FACTS
¶ 2. Anthony worked as a police officer for the Town of Marion from 1997 until she was discharged in early 2007. Anthony testified that on May 2, 2006, she was sent to the firing range by Ben Langston, the Chief of the Marion Police Department, to qualify with her handgun and shotgun. On the first day of the event, Anthony successfully qualified with the handgun, but she failed to meet the qualifications for the shotgun. Anthony was instructed to stay at the firing range and *685 make another attempt. Anthony failed to qualify on the second attempt. When Anthony informed Chief Langston of her failure to qualify with the shotgun, Chief Langston issued her ammunition so that she could practice with the shotgun at home. Anthony testified that she told Chief Langston that using the shotgun had hurt her arm. Chief Langston, however, refuted this allegation by claiming that Anthony never mentioned getting hurt at work to him.
¶ 3. On the morning of May 3, 2006, Anthony reported to Chief Langston that the shotgun issued to her by the Town of Marion would not fire. Chief Langston verified that the shotgun issued to Anthony no longer functioned properly, and he gave her paperwork to purchase a new shotgun. Later in the afternoon on May 3, 2006, Anthony went back to the firing range and qualified with the new shotgun.
¶ 4. On May 16, 2006, Anthony reported to the Family Medical Clinic with complaints of numbness in the right shoulder, arm, and leg. Anthony also reported a history of occasional numbness in her lungs and swelling in her hands. Anthony was assessed with “uncontrolled hypertension [and] [v]ery worrisome history of numbness in the right arm and leg,” and was referred to the emergency room for further evaluation. Anthony failed to report her recent use of a shotgun at the qualifying events to her treating physician at the clinic.
¶ 5. Anthony returned to the Family Medical Clinic on May 31, 2006, with symptoms of headaches, face and hand swelling, and occasional numbness in the leg. Anthony was assessed with hypertension and medical non-compliance, and she was ordered to return to the clinic on the next Monday for a follow-up appointment. On June 5, 2006, Anthony returned to the clinic with symptoms of numbness on her right side. Dr. Marc Fisher, Anthony’s treating physician, instructed Anthony to continue taking her blood pressure medication and to return to the clinic in one month for a follow-up visit. Anthony failed to mention any type of work injury during these medical visits.
¶ 6. On June 13, 2006, Anthony returned to the clinic with symptoms of pain and weakness to the right side of her neck radiating down her right shoulder and arm. Dr. Fisher referred Anthony for a MRI. Again, Anthony failed to mention any type of work-related accident during this visit. Then, on June 15, 2006, Anthony underwent the MRI, which showed a posterior right lateral disc herniation and bony spurring at the C5-6 level, causing moderate distortion of the cervical cord, and a posterior right paracentral disc herniation and bony spurring at the C4-5 level. Anthony was referred to Dr. David Malloy, a neurosurgeon.
¶ 7. On August 4, 2006, Anthony saw Dr. Malloy for complaints of neck pain, right upper extremity pain, and right lower extremity pain with numbness. Anthony reported to Dr. Malloy that around the first of June 2006, she shot a shotgun that kicked, and she began having increased pain in the right side of her neck, in her right arm, and down the right lower extremity. Anthony also reported that she had a similar episode one year prior, but was never evaluated. Dr. Malloy diagnosed Anthony with degenerative disc changes in the cervical spine with a herniation of disc material at the C5-6 level.
¶ 8. On September 11, 2006, Dr. Malloy sent Anthony to physical therapy for her cervical problems. Then, on October 23, 2006, Anthony was seen again by Dr. Mal-loy for complaints of right upper extremity pain and right lower extremity pain. Dr. Malloy recommended Anthony undergo an anterior cervical discectomy and fusion at *686 the C5-6 level. Anthony had the surgery on November 1, 2006. Dr. Malloy released Anthony to return to work on January 29, 2007.
¶ 9. On December 28, 2006, Elvis Hudson, the Mayor of the Town of Marion, wrote a letter to Anthony recognizing her tentative return to work on January 5, 2007, and requesting Anthony provide Chief Langston with a release to return to work from her treating physician. Mayor Hudson’s letter also informed Anthony that she would have to return to her full-duty position, as there were no light duty positions available in the police department. Then, on January 10, 2007, Mayor Hudson and Chris M. Falgout, an attorney for the Town of Marion, wrote a letter to Anthony informing her that the Marion Board of Alderman had voted to extend her medical leave for a period of thirty days from the date of the letter. The letter also noted that Anthony would have to provide the Town of Marion with a release from her treating physician stating that she could return to full-duty work.
¶ 10. On February 13, 2007, the Marion Board of Alderman voted to terminate Anthony’s employment. On February 15, 2007, Mayor Hudson wrote Anthony a letter informing her of the Board’s decision. According to Chief Langston, Anthony failed to keep him advised of her medical condition or when she could return to work, and Anthony was terminated for not communicating with him about her intentions of returning to work.
¶ 11. Anthony applied for disability-based retirement benefits from the Mississippi Public Employees Retirement Systems (PERS) and subsequently was awarded duty-related disability benefits. However, Anthony was denied workers’ compensation benefits, as set forth below, for failing to meet her burden of proof to show a compensable work-related injury.
PROCEDURAL HISTORY
¶ 12. Anthony claimed that she sustained a herniated cervical disc following the May 2006 weapons-qualifying event. After reporting her health issues, her employer, the Town of Marion, and its insurance carrier, Mississippi Municipal Workers’ Compensation Group, refused to provide benefits to Anthony under the Mississippi Workers’ Compensation Act. Subsequently, Anthony filed a petition to controvert with the Commission alleging that she had sustained injuries to her shoulder, neck, arm, wrist, and leg while qualifying at the firing range as required by her employer, the Town of Marion. A hearing was held before an administrative judge (AJ). Anthony and Langston were the sole witnesses at the hearing, and Dr. Malloy’s deposition testimony was offered as one of the sixteen exhibits admitted into evidence. Following the hearing, the AJ denied Anthony’s claim for workers’ compensation benefits, finding as follows:
Claimant has not met her burden of proof that she had a work accident in May 2006, and injured her arm, shoulder, neck, and leg. The preponderance of the credible evidence showed that Claimant did not report a work-related injury until August 2006, three months after the alleged incident occurred. This was also after Claimant was informed that she had a herniated cervical disc. The medical evidence was equivocal and insufficient to sustain Claimant’s allegation of work-related injuries. Therefore, Claimant’s claim for workers’ compensation benefits for injuries to her arm, shoulder, neck, and leg from an alleged work accident in May 2006 is hereby denied.
Anthony appealed the AJ’s decision to the Commission, which affirmed the AJ’s decision. Anthony appealed the Commission’s *687 decision to the Lauderdale County Circuit Court. The circuit court affirmed the Commission’s denial of benefits. Anthony now appeals.
STANDARD OF REVIEW
¶ 13. This Court must defer to an administrative agency’s findings of fact if there is “even a quantum of credible evidence which supports the agency’s decision.” Bryan Foods, Inc. v. White, 913 So.2d 1003, 1007 (¶ 16) (Miss.Ct.App.2005) (citing Hale v. Ruleville Health Care Ctr., 687 So.2d 1221, 1224 (Miss.1997)). “This highly deferential standard of review essentially means that this Court and the circuit courts will not overturn a Commission decision unless [the] decision was arbitrary and capricious.” Id.
¶ 14. The Mississippi Supreme Court has stated:
We do not sit as triers of fact; that is done by the Commission. When we review the facts on appeal, it is not with an eye toward determining how we would resolve the factual issues were we the triers of fact; rather, our function is to determine whether there is substantial credible evidence to support the factual determination by the Commission.
Id. at 1007-08 (¶ 17) (quoting S. Cent. Bell Tel. Co. v. Aden, 474 So.2d 584, 589 (Miss.1985)). Stated differently, we will reverse the Commission’s order only if we find that order clearly erroneous and contrary to the overwhelming weight of evidence. Id. (citing Myles v. Rockwell Int’l, 445 So.2d 528, 536 (Miss.1984)). “An appellate court may not simply reweigh the evidence and substitute its decision for that of the Commission. Indeed, this Court has a duty to defer to the Commission when its decision can be supported.” Id. (citing Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)).
¶ 15. “When, as here, the Commission accepts the [AJ’s] findings and conclusions, we review those findings and conclusions as those of the Commission.” Mabry v. Tunica County Sheriff’s Dep’t, 911 So.2d 1038, 1042 (¶ 12) (Miss.Ct.App.2005).
DISCUSSION

I. Whether the circuit court erred in affirming the order of the Commission.

¶ 16. Anthony argues that the circuit court erred in affirming the Commission’s ruling. Specifically, Anthony asserts that the circuit court erred by: (1) failing to consider the remedial nature of the workers’ compensation statutes and the broad interpretation they are to be given; (2) rejecting that the Commission’s order was arbitrary and capricious, when the record reveals that the Town of Marion admitted to a third party that Anthony sustained a work-related injury that caused disability; (3) finding that the Commission did not err in basing its denial of benefits on Anthony’s failure to immediately report the injury; (4) concluding that the Commission properly weighed the evidence before it; and (5) finding that the Commission properly concluded that the medical evidence was not sufficient to show a work-related injury.
¶ 17. “It has long been established that whether the evidence is sufficient is the only factual determination appellate courts have the right to decide. It is the duty of the circuit court to affirm the Commission’s findings if they are supported by substantial evidence or are not manifestly wrong.” Bryan Foods, 913 So.2d at 1010 (¶ 31) (citing Fin. Inst. Ins. Serv. v. Hoy, 770 So.2d 994, 997 (¶ 6) (Miss.2000)). Keeping this standard in mind, we will review Anthony’s assign *688 ments of error pertaining to the findings of the Commission only.

II. Whether the order of the Commission is supported by substantial evidence.

¶ 18. To establish a prima facie case of disability, the claimant bears the burden of showing by a fair preponderance of the evidence: “(1) an accidental injury; (2) arising out of and in the course of employment; and (8) a causal connection between the injury and the claimed disability.” Mabry, 911 So.2d at 1042-48 (¶ 13) (citing Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 13 (Miss.1994)). An injury arises out of employment when some causal connection exists between the employment and the injury. Id. at 1043 (¶ 13). Once a claimant establishes a prima facie case of disability, the burden of proof shifts to the employer. Id. Additionally, “[u]nless common knowledge suffices, medical evidence must prove not only the existence of a disability but also its causal connection to the employment. As with any fact-finder, the Commission is entitled to rely upon the evidence and reasonable inferences.” Smith v. Tronox, LLC, 76 So.3d 774, 778 (¶ 14) (Miss.Ct.App.2011).

A. PERS

¶ 19. Anthony argues that the substantial evidence does not support the Commission’s denial of her claim of a com-pensable work-related injury. In support of this contention, Anthony points out that the Commission failed to consider that Anthony was approved by PERS for duty-related benefits for the injury. Anthony asserts that proof that she was approved for these benefits by PERS is persuasive evidence that her injury occurred during the course and scope of employment with the Town of Marion.
¶ 20. After reviewing the record, we find no merit to this argument. As acknowledged by the Town of Marion in its appellate brief, PERS does not supplant the authority of the Commission in determining whether a claimant has proven a compensable work-related injury. In fact, the Mississippi Supreme Court has stated that “PERS law is separate and distinct from workers’ compensation law.” Pub. Employees’ Ret. Sys. v. Stamps, 898 So.2d 664, 675 (¶ 40) (Miss.2005). Further, “[t]he statutory requirements for hurt-on-the-job disability benefits are separate and distinct from those for workers’ compensation benefits. One does not depend on the other.” Brinston v. Pub. Employees’ Ret. Sys., 706 So.2d 258, 260 (¶ 10) (Miss.Ct.App.1998). This issue is without merit.

B. Admission of Liability

¶21. Anthony also argues that the Commission’s decision was arbitrary and capricious because the record reveals that the Town of Marion admitted to a third party that Anthony sustained a work-related injury that caused disability. Specifically, Anthony refers to the October 2006 questionnaire completed by Charlotte Rasco, the town clerk of Marion. The questionnaire related to Anthony’s application for short-term disability benefits under an AFLAC policy that she had purchased. The application inquired whether the injury producing disability arose from a workplace accident. The response checked was ‘Tes.” The application also noted that Anthony became unable to work in June 2006.
¶ 22. In Reynolds v. McGehee, 220 Miss. 750, 753, 71 So.2d 780, 782 (1954), the Mississippi Supreme Court stated:
In the absence of opposing evidence or in the light of the surrounding circumstances or other evidence in the case, an admission against interest may be sufficient to establish the fact admitted, or *689 the cause of action or liability or defense resting on proof of such fact, and it has been considered that cogent or full and unquestioned proof is required to overcome the effect of a deliberate admission.
(Emphasis added). This is not a case in which an “absence of opposing evidence” exists. In this case, obvious opposing evidence was presented at the hearing. The evidence presented indicated that Rasco denoted on an October 2006 AFLAC Accident Claim Form that Anthony was unable to work due to a work-related injury. Contradictory evidence was also presented of a “Continuing Disability Claim Form” submitted to AFLAC in January 2007, also signed by Rasco, which did not indicate that Anthony’s injury was work related. The follow-up form asked, “Was this disability caused by an accident that occurred at the workplace?” Rasco did not place a check mark in either the “yes” or “no” box. Furthermore, at the hearing before the AJ, the parties stipulated that if Rasco was called to testify, “her testimony would materially corroborate and be cumulative to Chief Langston’s testimony.” Chief Lang-ston testified that no conversation occurred where Anthony provided notice of her claimed injury to himself and Rasco; thus this evidence rebutted the alleged admission. This issue is without merit.

C. Failure to Report

¶ 23. Anthony argues that the Commission erred in basing its denial of benefits on Anthony’s failure to report the injury to the Town of Marion immediately after its occurrence, instead waiting three months before reporting. Anthony cites Bryan Foods, Inc. v. White, 913 So.2d 1003 (Miss.Ct.App.2005), in suggesting that a claimant’s failure to notify the employer of an injury is not a sufficient basis for denying benefits. We find White to be distinguishable from the case at hand.
¶ 24. In White, the claimant’s initial injury was reported to the employer’s nurse several days after the accident. Id. at 1006 (¶ 4). The nurse told the claimant that “his neck pain could not possibly be related to his work,” and his employer, Bryan Foods, would not compensate him. Id. After consulting with two physicians and one neurosurgeon, the claimant again reported the injury to the employer’s nurse. Id. at (¶ 7). The nurse once again told the claimant that “his injury could not have been work-related and that he would have had to have ‘fallen from a two-story building to mess his neck up.’ ” Id. The claimant in White relied upon the observations of his employer’s nurse in not relating his injury to a work-related accident. Id. at (¶ 5).
¶ 25. Unlike White, Anthony does not claim anyone from her employment or her medical providers stated that her injury could not be work-related thus causing a delay, like that in White, in reporting her injury.[1] Rather, Anthony asserts that she told Chief Langston her arm hurt in May 2006 and that she then failed to report her injury as work related to her employer or her medical providers until she consulted with Dr. Malloy, a neurosurgeon, in August. Anthony testified that upon returning from the shooting range during the weapons-qualification training, she informed Chief Langston that she believed the shotgun injured her arm because it *690 was hurting. The record shows, however, that Chief Langston disputed Anthony’s testimony, testifying that he did not recall having such a conversation with Anthony. The record also shows that Anthony visited her treating physician at the Family Medical Clinic several times before reporting or mentioning the shotgun incident to Dr. Malloy, her neurosurgeon, whom she saw after the MRI was performed and after she was diagnosed with the herniated disc.[2]
¶ 26. Furthermore, the record reflects that the decision of the Commission was not based solely upon Anthony’s failure to report her injuries for three months. Rather, it was based on the totality of the circumstances. The Commission also considered that Anthony reported her injuries after she was diagnosed with a herniated disc, and that the medical evidence was equivocal and insufficient to sustain her claim of a work-related injury. Dr. Malloy testified that the pain related to shotgun recoil would have developed within a week, and it would be unusual for such pain to take twelve or thirteen days to develop. This issue is without merit.

III. Weight & Sufficiency of the Evidence 
[3]

¶ 27. Anthony argues that the Commission did not properly weigh the evidence, and that the Commission erroneously concluded that the medical evidence was insufficient to prove a compensable work-related injury. Anthony asserts that Dr. Malloy’s opinion was that to a reasonable degree of medical certainty, the shotgun recoil produced Anthony’s injury, and that he had no evidence suggesting or indicating a cause for her injury other than shotgun recoil. Further, Anthony alleges that Dr. Malloy’s opinions were not contradicted by competing medical opinions, nor did the Town of Marion introduce evidence of another cause for Anthony’s injury.
¶ 28. This Court has recognized that
[t]he injured employee bears the general burden of proof of establishing every essential element of his or her claim by a preponderance of the evidence that: an accidental injury occurred arising out of and in the course of employment, a disability is suffered, and a causal connection between the work injury and the claimed disability exists.
Airtran v. Byrd, 953 So.2d 296, 299 (¶ 3) (Miss.Ct.App.2007). “The causal connection between the claimant’s injury and disability must be proven with competent medical proof and based upon a reasonable degree of medical probability.” Id. (emphasis added).
¶ 29. In this case, after reviewing Dr. Malloy’s testimony, we do not find that Dr. Malloy concluded to a reasonable degree of medical certainty that the shotgun recoil produced Anthony’s injury. In fact, Dr. Malloy testified that he would have expected Anthony to become symptomatic fairly quickly, “within the first week.” Dr. Malloy did testify that, in a hypothetical sense, the discharge of a firearm would be a logical explanation of the disc herniation, and based on the information provided to him by Anthony, he felt the two were related. However, Dr. Malloy also testified that if the incident occurred on May 2, 2006, and she first reported it on May 16, 2006,' then given the two-week delay, it was more probable than not that the symptoms were not related to the shotgun recoil.
*691 ¶ 30. Viewed in its entirety, Dr. Mal-loy’s testimony fails to support Anthony’s allegation that her injury resulted from a work-related incident. Therefore, we find no error in the Commission’s determination that the medical evidence was equivocal and insufficient to sustain Anthony’s claim of a compensable work-related injury. Furthermore, while Anthony argues the Commission’s decision was erroneous because the Town of Marion failed to provide testimony to contradict Dr. Malloy’s opinion, we recognize that Anthony, not the Town of Marion, holds the burden of proof to establish the elements of her claim for workers’ compensation benefits. See id. Anthony failed to meet this burden.
CONCLUSION
¶ 31. Based upon our review of the record, we cannot say that the Commission erred in finding that Anthony faded to prove, by a preponderance of the evidence, that she had sustained a compensable work-related injury. Our examination of the record leads us to the conclusion that the Commission’s findings were adequately supported by competent substantial evidence. Therefore, we affirm the judgment of the circuit court that affirmed the Commission’s denial of workers’ compensation benefits to Anthony.
¶ 32. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR.

. Anthony claims that after her medical visit with Dr. Malloy, she advised Rasco that she had sustained a work-related injury, and Ras-co informed Anthony that if she made the workers' compensation claim, she would have to repay "all of the pay that she had received.” Anthony argues that Rasco apparently attempted to discourage her from pursuing the workers’ compensation claim and made an erroneous representation because sick and vacation pay does not constitute salary in lieu of compensation.

. Anthony sought medical care on the following dates without a complaint or report of the shotgun incident: May 16, May 31, June 13, and June 15.

. Because we find issues IV and V raised by Anthony to be interrelated, we will discuss them together in our analysis.