# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-WC-01449-COA

**MARY L. HARMON**                                                                 **APPELLANT**

**v.**

**SFD HOLDINGS INC. (OXFORD**                                           **APPELLEES**
**HEALTHCARE) AND LIBERTY MUTUAL**
**INSURANCE COMPANY**

| | |
|---|---|
| DATE OF JUDGMENT: | 09/21/2017 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | ROBERTA LYNN HAUGHTON |
| ATTORNEYS FOR APPELLEES: | GEORGE E. READ |
| | SHEA STEWART SCOTT |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 08/28/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE LEE, C.J., BARNES AND WESTBROOKS, JJ.

### LEE, C.J., FOR THE COURT:

¶1.     In this appeal, we must determine whether the Mississippi Workers' Compensation Commission's (the Commission) decision to reduce the claimant's loss of wage-earning capacity from 50% to 20% was arbitrary and capricious.

### PROCEDURAL HISTORY

¶2.     Mary Harmon suffered an on-the-job injury on June 14, 2013, while working as a certified nurse assistant (CNA) at SFD Holdings Inc., d/b/a Oxford Healthcare, in Tupelo, Mississippi.  She filed a petition to controvert on August 21, 2013.  Harmon's employer admitted that she sustained an injury to her cervical spine, back, and right upper extremity.

After a hearing, the administrative judge (AJ) found that Harmon suffered a 50% loss of wage-earning capacity. The AJ awarded Harmon $242 per week in temporary total disability benefits beginning June 14, 2013, and ending October 14, 2015. The AJ also awarded Harmon $121.01 per week in permanent partial disability benefits beginning October 15, 2015, for 450 weeks.

¶3.    SFD appealed to the Commission. The Commission affirmed the AJ's findings regarding the compensability of Harmon's claim and the award of temporary total disability benefits but reduced the loss of wage-earning capacity from 50% to 20%. As a result, Harmon was awarded $48.40 per week in permanent partial disability benefits.

**FACTS**

¶4.    After her injury, Harmon went to a local emergency room for treatment, where she received pain medication.[1] Harmon later sought treatment from Dr. Chad Altmeyer, who initially prescribed injections and physical therapy. Dr. Altmeyer continued to treat Harmon's right-shoulder injury, but referred her to Dr. Kenny Edwards for treatment of her back injury. Ultimately, Harmon required surgery on her back and her right shoulder. Dr. Edwards diagnosed Harmon with cervical stenosis and disc herniations from vertebrae C4 through C7. Dr. Edwards performed a cervical fusion on Harmon in April 2014 and placed Harmon at maximum medical improvement (MMI) on December 3, 2014, with a twenty-five-pound lifting restriction.

¶5.    Dr. Altmeyer performed a right shoulder arthroscopy with debridement and

---

[1] The medical records from Harmon's emergency-room visit were not produced.

decompression on Harmon's right shoulder in June 2015. Post-surgery, Dr. Altmeyer recommended that Harmon continue physical therapy. Dr. Altmeyer placed Harmon at MMI on October 14, 2015, with restrictions including no overhead work and no repetitive pushing or pulling.[2] Dr. Altmeyer assigned Harmon a permanent impairment rating of 3% to her right upper extremity.

¶6.     Dr. Rahul Vohra conducted an independent medical examination (IME) on Harmon in April 2016. Dr. Vohra also reviewed the medical records from both Dr. Edwards and Dr. Altmeyer. Dr. Vohra determined that Harmon had an impairment rating of 1% to her upper right extremity and 6% to her whole person for her cervical spine. Dr. Vohra agreed with the twenty-five-pound lifting restriction. He further found that Harmon should limit overhead work to an occasional basis and limit pushing and pulling up to forty pounds on an occasional basis.

¶7.     Pete Mills conducted a vocational evaluation dated May 29, 2015. Mills's report referred to a functional capacity evaluation (FCE) conducted by Alan Thompson on October 21, 2014. The excerpt from the FCE in Mills's report stated that Harmon was capable of light-level work, or "exerting up to [twenty] pounds of force constantly and/or up to ten pounds of force frequently, and/or negligible amount of force constantly to move objects."

¶8.     Mills noted that Harmon had initially returned to Oxford Healthcare performing "light

---

[2] The medical records of Harmon's appointments with both Dr. Altmeyer and Dr. Edwards were not entered into evidence. Detailed information regarding these appointments is contained in Dr. Rahul Vohra's independent medical evaluation dated April 8, 2016, and in Pete Mills's vocational evaluations dated May 29, 2015, and December 11, 2015.

type work, clerical and office type duties."[3]  But during this time, Harmon continued to experience pain in her neck, right shoulder, and extremities.  Noting that her access to employment was reduced as a result of her physical restrictions and that she was unable to continue working as a CNA, Mills stated that Harmon would be capable of employment and activities in the "sedentary and light physical demand areas."  Mills indicated Harmon could find work as a fast-food worker, cashier, restaurant manager, waitress, or office clerk.  Mills performed a labor market survey and located jobs within Harmon's restrictions with a salary range from $7.25 to $9.50 per hour for the majority of the jobs.  Two jobs paid more—one up to $11.00 per hour and the other up to $18.00 per hour.  According to Mills, Harmon was unsure of her hourly salary but thought she was initially paid $9.00 per hour and was earning between $10.00 and $11.00 per hour around the time of her injury.

¶9.     Harmon had filed two prior workers' compensation claims.  Both prior claims were settled—one in 2010 and the other in 2011.  In the first claim, Harmon complained of injuries to her head, neck, chest, and knees.  In the second claim, Harmon complained of injuries to her neck, right shoulder, right arm, legs, back, and body as a whole.

¶10.    Harmon testified during the hearing.  Her testimony was limited because she could not remember details of her work history or her prior workers' compensation claims.  She testified that she was still experiencing pain from her injury and wanted additional medical treatment.

**STANDARD OF REVIEW**

---

[3] At the time of the hearing before the AJ, Harmon was unemployed.

¶11.    The standard of review in a workers' compensation case is well settled. If the findings of the Commission are supported by substantial evidence, then they are binding on this Court. *Mitchell Buick, Pontiac & Equip. Co. v. Cash*, 592 So. 2d 978, 980 (Miss. 1991). "The [Commission] sits as the 'ultimate finder of facts' in deciding compensation cases, and therefore, 'its findings are subject to normal, deferential standards upon review.'" *Pilate v. Int'l Plastics Corp.*, 727 So. 2d 771, 774 (¶12) (Miss. Ct. App. 1999). "We are bound even though the evidence would convince the [C]ourt otherwise if it were instead the ultimate fact[-]finder. We will overturn [the] Commission's decision only when there is an error of law or an unsupportable finding of fact." *Mont.'s Sea Kettle Rest. v. Jones*, 766 So. 2d 100, 102 (¶7) (Miss. Ct. App. 2000) (citation and internal quotation marks omitted).

¶12.    Additionally, decisions as to loss of wage-earning capacity are "largely factual and [are] to be left largely to the discretion and estimate of the Commission." *Bryan Foods Inc. v. White*, 913 So. 2d 1003, 1010 (¶28) (Miss. Ct. App. 2005).

## DISCUSSION

¶13.    In her only issue on appeal, Harmon contends that the Commission's decision to reduce her loss of wage-earning capacity from 50% to 20% is arbitrary and capricious and not supported by the law.

¶14.    To determine loss of wage-earning capacity, "[t]he Commission considers the employee's actual wages earned prior to the injury as compared to the employee's capacity to earn those same wages after the injury, as well as other factors such as the employee's age, education, training and work experience, and his or her ability to return to the same or other

5

employment." *Airtran Inc. v. Byrd*, 953 So. 2d 296, 301 (¶11) (Miss. Ct. App. 2007).

¶15. At the time of the vocational evaluation, Harmon was forty-six years old. She had finished high school and taken courses at several community colleges over the years. In addition to her CNA certificate, Harmon had received certificates in business administration and cosmetology. Mills indicated that Harmon was "proficient in utilizing a computer in an office environment." Harmon's work history included cashier in a retail store, cashier in a fast-food restaurant, assistant manager at a restaurant, and homemaker aid.

¶16. Harmon argues that she made diligent efforts to secure other work but was unable to find another job. In the vocational evaluation, Mills stated that Harmon would be capable of employment and activities in the "sedentary and light physical demand areas." Mills also located over twenty-six jobs available within Harmon's restrictions. The record indicates Harmon only applied for three of the available jobs, and in one application—which SFD characterizes as an inquiry because Harmon did not fill out an application—she informed the potential employer about her physical restrictions. In a similar situation, we noted that a claimant's lack of effort in applying for available jobs "could have been seen by the Commission as rather perfunctory." *Ford v. Magnolia Franchise Holdings LLC*, 112 So. 3d 467, 470 (¶12) (Miss. Ct. App. 2013).

¶17. All three doctors who had examined or treated Harmon indicated that she could return to light-duty work with certain restrictions. Based upon this information, the Commission found that Harmon had the ability to work in the light-duty category and earn at least minimum wage.

¶18. Viewing the record as a whole, we find that substantial evidence supports the Commission's decision to reduce the loss of wage-earning capacity from 50% to 20%. Our deferential standard of review requires this Court to affirm the Commission's judgment.

¶19. **AFFIRMED.**

**IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**