BARNES, J.,
for the Court:
¶ 1. The City of Jackson (City) appeals the order of the Circuit Court of Hinds County, which affirmed the award of permanent partial workers’ compensation benefits to Sam Sandifer by the Mississippi Workers’ Compensation Commission (Commission). Sandifer was a long-time *683 firefighter for the City and was diagnosed with respiratory disease indicative of asbestosis. The administrative judge (AJ) and the Commission found substantial evidence linking Sandifer’s illness with his employment.
¶2. On appeal, the City argues that Sandifer failed. to show a direct causal connection between his employment as a firefighter and his illness. Further, the City claims the statute of limitations had expired, barring any award of benefits to Sandifer. Finding no error with the Commission’s decision, however, we affirm.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 3. Sandifer was employed by the Jackson Fire Department (JFD) from 1985 until 2007 — twenty-two years. On February 20, 2007, Sandifer’s pulmonologist, Dr. John Studdard, found his lung problems indicative of “asbestos-related pulmonary parenchymal and pleural disease — asbestosis” related to his employment as a firefighter. Sandifer was forty-three years old. His last day of “active employment” was July 23, 2006.[1] In November 2007, Sandifer filed a petition to controvert for workers’ compensation benefits. Sandi-fer’s employment and medical history were established as follows.
¶ 4. After graduating from high school in 1982, Sandifer worked as a meat cutter in a grocery store from 1983 until 1985, when he started working with the JFD. Sandifer also worked part-time as an outdoor plumber, digging ditches and installing PVC pipe for new residential construction for two months during the summers of 2004 and 2005. Additionally, he worked in 2005 for two months at a sawmill, where he hauled wood outside the mill, but he had to quit due to breathing problems. Sandifer denied, coming into contact with asbestos during either of these part-time jobs.
¶ 5. As a Jackson firefighter, Sandifer held many positions, and eventually rose to the rank of captain. He claimed significant exposure to asbestos both at his workplace and when fighting fires. Over Sandifer’s career, he was assigned and worked at nearly every JFD station but one. He testified that many of these fire stations contained asbestos ceiling and floor tiles that were often broken or torn. Also, the pipes in many stations were wrapped in asbestos insulation. He stated many of the stations had to be temporarily closed for the removal of asbestos. Part of his duties at these stations involved sweeping the floors and picking up asbestos floor tiles, which produced asbestos dust.
¶ 6. Additionally, Sandifer claimed exposure to asbestos while fighting numerous fires in older commercial buildings and older residential neighborhoods. He stated many older homes were constructed with asbestos siding, shingles, and insulation. He would often have to tear the asbestos off of the walls and pipes when extinguishing the fires. Even though he wore a mask and breathing apparatus while fighting fires, he claimed that dust and smoke still entered the mask.
¶ 7. Sandifer had two hospital-emergency-room visits for smoke inhalation while fighting fires — in August 2002 -and in July 2006. Dr. Studdard was the pulmonologist when Sandifer went to the emergency room in 2002, and Sandifer has continued to be under his care. In 2002, Dr. Stud-dard stated that Sandifer’s pulmonary *684 function was “indicative of moderate to severe restrictive lung disease,” but the cause of the restriction was “unclear.” Further, a CT scan did not show any pleural disease.
¶8. In 2006, however, Sandifer’s condition worsened significantly, and Dr. Stud-dard diagnosed him with a “new pleural effusion,” or excess fluid around the lungs, which caused difficulty breathing. In his deposition, Dr. Studdard testified that April 2006 was the first time any pleural disease was noted, and the cause was still unknown. Therefore, in May 2006, diagnostic lung surgery[2] was performed by Dr. Michael Koury, a thoracic surgeon.
¶ 9. On July 23, 2006, Sandifer went to the emergency room after fighting a fire because he was having trouble breathing. Dr. Studdard treated him, found fluid in Sandifer’s lungs, and diagnosed him with pneumonia. On the advice of Dr. Stud-dard, Sandifer did not work again after this episode.
¶ 10. In a “To Whom It May Concern” letter dated February 20, 2007, Dr. Stud-dard listed Sandifer’s lung problems[3] and found them “typical” of “asbestosis.” “Within a reasonable medical certainty,” Dr. Studdard related the disease to Sandi-fer’s employment as a firefighter.
¶ 11. Because Sandifer continued to have problems breathing and his chest x-rays were worsening, in July 2007, Sandi-fer was referred to Dr. Robert Cerfolio, who performed an additional diagnostic surgery on both lungs (another thoracosco-py and pleural biopsy). Dr. Cerfolio also stripped the pleural lining off Sandifer’s lungs to help him breathe. Sandifer’s lungs showed significant pleural disease, but no mesothelioma.
¶ 12. In another “To Whom It May Concern” letter dated October 10, 2008, Dr. Studdard stated that the “clinical picture of asbestos-related lung disease only became clear” after Sandifer’s diagnostic lung surgeries. Dr. Studdard further wrote and later testified that “within a reasonable medical certainty,” Sandifer’s respiratory disease was “related to previous asbestos exposure.” He stated Sandi-fer’s lung volume was reduced to less than fifty percent, which was considered “severe[ly] restrictive” and “clearly is disabling.” With such reduced lung function, Dr. Studdard found Sandifer “completely and totally disabled from any employment,” let alone as a fireman, and that Sandifer had reached maximum medical improvement. Further, Dr. Studdard stated it was more likely Sandifer’s medical condition would get worse rather than better.
¶ 13. Sandifer, who never smoked, testified that he did not think he could hold down a job due to his breathing problems. He cannot take deep breaths, has pain in his chest, and feels dizzy after exertion. Lifting heavy objects is difficult, and he becomes winded after walking or talking. He claimed he was not exposed to asbestos at any job other than firefighting.
¶ 14. Johnny Bass, a retired district chief and a thirty-year employee of JFD, testified at the hearing before the AJ. He *685 corroborated Sandifer’s testimony that there was asbestos in many fire stations and at the fires he and Sandifer fought together. Bass recalled the firefighter union’s concern about asbestos in the City’s fire stations during the 1980s, resulting in an asbestos-abatement program. A project manual from 1989 was entered into evidence; it was the City’s contract with an environmental group for the removal of asbestos materials from several Jackson fire stations. It was stipulated that Earl Jones, a former JFD firefighter, would also corroborate Sandifer’s and Bass’s testimonies about exposure to asbestos while on the job.
¶ 15. Dr. Obie McNair, a pulmonologist retained by the City, reviewed Sandifer’s case documents and medical records, and concluded Sandifer was not occupationally disabled. However, Dr. McNair had never treated or spoken with Sandifer. While he agreed that Sandifer suffered from respiratory disease, it was his opinion that a more likely cause of any asbestos-related pulmonary condition was Sandifer’s temporary part-time work as a plumber.
¶ 16. In June 2010, the AJ awarded Sandifer permanent total disability benefits due to work-related pulmonary disease. The AJ made the following findings. Sandifer’s respiratory disease became “occupationally disabling” as of July 24, 2006, or Sandifer’s last day of active employment. Sandifer’s and Bass’s unrefuted testimonies, and the asbestos-abatement document, show Sandifer was exposed to asbestos throughout his career as a firefighter. And there was no credible evidence Sandifer was exposed to asbestos anywhere else. Dr. Studdard’s testimony was found to carry more weight than Dr. McNair’s testimony, as Dr. Studdard was Sandifer’s treating physician for several years. Additionally, Dr. Studdard proved Sandifer suffers from respiratory disease as a result of exposure to asbestos in his employment as a firefighter. Sandifer began suffering from respiratory ailments in 2002, when he first saw Dr. Studdard, but he was not aware of the “compensable nature” of his respiratory disease prior to February 2007.
¶ 17. The Commission affirmed the AJ’s order, except it found Sandifer entitled to permanent partial (not permanent total) benefits.[4] The Commission pointed to Sandifer’s testimony, which suggested that he retained some physical capabilities. Sandifer testified that since he retired from firefighting, he takes his children to school, checks on his mother, cuts his grass, drives his vehicle, does laundry, and cooks. Also, Bruce Brawner, a vocational-rehabilitation expert retained by the City, testified that Sandifer would probably be limited to sedentary work, but he did not have enough information to give a definitive opinion on Sandifer’s employability. Further, Dr. McNair testified that Sandi-fer was capable of performing forty hours of sedentary work per week. Accordingly, the Commission found Sandifer could perform at a full-time, sedentary, minimum-wage job.
¶ 18. The Hinds County Circuit Court found the Commission’s award of permanent partial disability supported by substantial evidence. The court also found that the action was not barred by the two-year statute of limitations. The City timely appealed.
*686 STANDARD OF REVIEW
¶ 19. In workers’ compensation cases, the Commission’s decision is afforded great deference on appeal. Murray v. Ingalls Shipbuilding/NGSS, 85 So.3d 561, 562 (¶ 5) (Miss.Ct.App.2010). The “Commission is the ultimate fact-finder” and “the ultimate judge of the credibility of witnesses.” Barber Seafood, Inc. v. Smith, 911 So.2d 454, 461 (¶27) (Miss.2005) (citing Smith v. Jackson Constr. Co., 607 So.2d 1119, 1123-24 (Miss.1992); Miller Transporters, Inc. v. Guthrie, 554 So.2d 917, 918 (Miss.1989)). As such, “facts determined by the Commission may not be disturbed on appeal when those facts are supported by substantial, credible evidence.” Murray, 35 So.3d at 562 (¶ 5) (citing Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 330, 335 (¶ 11) (Miss.2003)). The appellate court “will reverse the Commission’s order only if it finds that order clearly erroneous and contrary to the overwhelming weight of the evidence.” Barber, 911 So.2d at 461 (¶ 27) (quoting Hardaway Co. v. Bradley, 887 So.2d 793, 795 (¶ 11) (Miss.2004)). For questions of law, the standard of review is de novo. Murray, 35 So.3d at 562 (¶ 5).
ANALYSIS
¶20. The City argues that Sandifer’s claim is barred by the two-year statute of limitations. Additionally, the City argues that the Commission’s decision is not based on credible, substantial evidence. In particular, the City claims that Sandifer failed to show a direct causal connection between his employment as a firefighter and his resulting injury/illness. We shall discuss each matter in turn.
I. Statute of Limitations
¶21. Mississippi Code Annotated section 71-3-35(1) (Rev.2011) provides the statute of limitations for workers’ compensation claims: “[I]f no payment of compensation (other than medical treatment or burial expense) is made and no application for benefits [is] filed with the [C]ommission within two (2) years from the date of the injury or death, the right to compensation therefor shall be barred.”
¶ 22. The City argues that Sandifer’s action first accrued on July 19, 2002, when Sandifer went to the emergency room with breathing difficulties from smoke inhalation after fighting a fire. At this time Sandifer was also first treated by Dr. Studdard. The City claims that Sandifer knew he had a compensable injury then, but failed to file his petition to controvert until five years later in November 2007, and thus his claim is barred.[5] The City *687 concludes that Sandifer’s claim in his petition about his illness “occurred through years of working as a firefighter and smoke inhalation” is not credible. We disagree.
¶ 23. Sandifer’s respiratory disease was latent in nature.[6] A latent disease or injury is one “that a reasonably prudent man would not be aware of at the moment it was sustained.” J.H. Moon & Sons, Inc. v. Johnson, 753 So.2d 445, 448 (¶ 15) (Miss.1999) (citing Georgia Pac. Corp. v. Taplin, 586 So.2d 823, 827 (Miss.1991); Quaker Oats Co. v. Miller, 370 So.2d 1363, 1366 (Miss.1979)). For latent injuries, the statute of limitations begins to run “from the time [a] compensable injury becomes reasonably apparent.” Tabor Motor Co. v. Garrard, 233 So.2d 811, 817 (Miss.1970). The time when the injury becomes reasonably apparent “is an issue of fact for the Commission to determine ....” Id. When the Commission’s factual determination is based upon substantial, credible evidence, this Court cannot disturb it. Murray, 35 So.3d at 562 (¶ 5). “[T]he statute is deemed not to have begun running if the claimant’s reasonably diligent efforts to obtain treatment yield no medical confirmation of compensable injury. This state’s laws do not penalize workers when they, with their physician’s assistance, cannot confirm that their injuries are compensable.” Taplin, 586 So.2d at 827.
¶ 24. Here, the AJ determined that Sandifer was “not reasonably aware of the compensable nature of his asbestos-related disease at any time prior to 2007.” The Commission agreed with this finding of fact, and so. do we. The event in July 2002 was a specific smoke-inhalation incident due to fighting a fire. This date was also the first time Dr. Studdard treated Sandifer. At that time, Sandifer’s physicians had no medical findings to support a specific diagnosis. Further, Dr. Studdard testified that there was no evidence Sandi-fer yet had pleural disease; that diagnosis was made in 2007. In April 2006, pleural disease was first noted by Dr. Studdard, but it was of an unknown origin. Sandifer was referred to Dr. Koury the next month for diagnostic testing in order to determine and/or rule out the cause of Sandi-fer’s respiratory issues. During the procedure, several hundred milliliters of fluid were suctioned out of Sandifer’s pleural lining, and several pleural biopsies were taken.
¶ 25. Sandifer’s latent disease cannot be traced back to a single' incident of smoke inhalation, as the City suggests. There is substantial evidence to show that the com-pensable nature of Sandifer’s illness could not have been “reasonably apparent” to him until February 2007 at the earliest, which is the date Dr. Studdard diagnosed Sandifer with work-related respiratory disease typical of asbestosis. Even so, further diagnostic testing was performed after this date by Dr. Cerfolio in June and July of 2007. Sandifer properly filed his petition to controvert in November 2007, approximately nine months after February 2007, which is well within the two-year statute of limitations. Therefore, his claim is not barred.
*688 II. Causation
¶ 26. The crux of the City’s argument is that Sandifer failed to show a direct causal connection between his employment as a firefighter and his resulting injury/illness. The City argues the award is not based on substantial or credible evidence. Instead, the City claims Sandi-fer’s award is based on conflicting or nonexistent medical evidence, including Dr. Studdard’s “unsupported speculation” and “gross assumptions,” not to mention Sandi-fer’s own “self-serving testimony.”[7] We disagree.
¶ 27. To establish entitlement to benefits under workers’ compensation law, the claimant bears the initial burden of proving by a preponderance of the evidence each element of the claim of disability. Hedge v. Leggett & Platt, Inc., 641 So.2d 9, 13 (Miss.1994). The elements are: “(1) an accidental injury, (2) arising out of and in the course of employment, and (3) a causal connection between the injury and the ... claimed disability.” Id. (citation omitted). Unless common knowledge is sufficient, medical evidence must prove the existence of the disability and its causal connection to the employment. Howard Indus., Inc. v. Robinson, 846 So.2d 245, 259 (¶ 49) (Miss.Ct.App.2002). The evidence used to prove the causation must be credible medical evidence and not mere speculation. Langford v. Southland Trucking, LLC, 30 So.3d 1266, 1280 (¶ 52) (Miss.Ct.App.2010). Also, the medical evidence must be “based upon a reasonable degree of medical probability.” Anthony v. Town of Marion, 90 So.3d 682, 690 (¶ 28) (Miss.Ct.App.2012).
¶ 28. Sandifer provided uncontra-dicted, credible evidence that he was exposed to asbestos during his employment, both while fighting fires and while working within various fire stations. He named specific buildings and fire stations where he worked that contained asbestos. His testimony on asbestos exposure was corroborated by long-time fellow firefighter Bass. Bass testified that he remembered how the fire stations had to be closed for asbestos removal. Further, an asbestos-abatement manual for the City’s fire stations during Sandifer’s employment was entered into evidence. Additionally, Jones, another firefighter, stipulated his testimony would corroborate Sandifer’s and Bass’s testimonies on asbestos. The City did not refute this proof.
¶ 29. Dr. Studdard also provided credible medical evidence that, to a reasonable degree of medical certainty, Sandifer’s considerable respiratory disease was related to his employment as a firefighter. Dr. Studdard treated Sandifer for lung problems for several years before any symptoms of disease became apparent. It is undisputed that a gradually developing injury is covered under the Workers’ Compensation Act. KLLM, Inc. v. Fowler, 589 So.2d 670, 675 (Miss.1991). The record shows Sandifer’s physicians carefully diagnosed and identified the origin of Sandi-fer’s lung issues, and ruled out other causes. Dr. Studdard’s testimony and records were not speculative. There was substantial medical evidence that supported a causal connection between Sandifer’s lung disease and employment. And again, the *689 City did not refute these findings with any credible evidence.
¶ 30. The City, while contradictorily maintaining that Sandifer does not have asbestosis, speculated that Sandifer could have been exposed to asbestos while working as a plumber on new construction for two months during the summers of 2004 and 2005. Yet, as Sandifer points out, by 2004, new asbestos products would have been banned from use.[8] Further, this time period is minimal compared to Sandi-fer’s twenty-two-year history as a fire fighter. Additionally, the City points out that Sandifer admitted he had the “wind knocked out of him” playing football as a youth, and that this incident could have somehow contributed to his lung disease. We do not find these arguments credible.
¶ 31. The City also complains that the AJ and Commission “ignored” the findings of its medical expert, Dr. McNair, which contradicted Dr. Studdard’s testimony. However, the Commission “serves as the ultimate fact finder in addressing conflicts in medical testimony and opinion.” Raytheon, 861 So.2d at 336 (¶ 13). “Where medical expert testimony is concerned, [the Mississippi Supreme Court] has held that whenever the expert evidence is conflicting, the Court will affirm the Commission whether the award is for or against the claimant.” Id. (quoting Kersh v. Greenville Sheet Metal Works, 192 So.2d 266, 268 (Miss.1966)). We find no error in this regard.
¶ 32. The Commission’s decision was supported by substantial, credible evidence. Accordingly, we affirm the circuit court’s order, which affirmed the Commission’s decision to grant workers’ compensation benefits to Sandifer.
¶ 33. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Since he had a great deal of leave time built up, Sandifer did not officially resign until May 2007.

. A thoracoscopy, or internal examination of the lungs, and pleural biopsies were performed.

. Dr. Studdard noted Sandifer had the following problems:
1.Significant restrictive pulmonary disease with significant decrease in lung capacity including a forced vital capacity of less than 50% of predicted.
2. Open lung biopsy evidence of pleural plaque formation.
3. Significant interstitial and pleural disease on chest x-ray of a moderate to severe degree.

. Because of Sandifer’s high average weekly wage, which was stipulated at $995.01, there was no impact on the rate of compensation paid to Sandifer for partial rather than total permanent disability. Sandifer is entitled to the maximum compensation rate of $364.57 per week, with the overall maximum amount of $164,056.50.

. The City makes much of the fact that Sandi-fer applied for, but was denied, duty-related disability retirement benefits through the Public Employees’ Retirement System of Mississippi (PERS). However, the Mississippi Supreme Court has stated that "PERS law is separate and distinct from workers' compensation law.” Pub. Employees’ Ret. Sys. v. Stamps, 898 So.2d 664, 675 (¶ 40) (Miss.2005). "The statutory requirements for hurt-on-the-job disability benefits are separate and distinct from those for workers' compensation benefits. One does not depend on the other.” Brinston v. Pub. Employees’ Ret. Sys., 706 So.2d 258, 260 (¶ 10) (Miss.Ct.App.1998).
Sandifer was denied these benefits due to a statutory exception for pulmonary or other conditions that are not a direct result of a traumatic event, and are instead deemed "ordinary disabilities].” See Miss.Code Ann. § 25-11-114(6) (Rev.2006), currently codified as Miss.Code Ann. § 25 — 11—114(7)(a) (Supp. 2013). He applied for these benefits on July 31, 2006, a few days after his last day of active employment. The City notes that San-difer stated on his PERS Form 8 that his disability was "interstitial lung disease.” Additionally, the form stated Dr. Studdard had been treating Sandifer for "respiratory problems” from July 2002 to July 2006. The City argues this is further proof the statute of limitations began to run in July 2002. Again, we do not find this fact an indication that *687 Sandifer was reasonably aware he had a duty-related compensable illness in July 2002.
We also note that Sandifer was approved for non-duty related "ordinary” PERS disability benefits.

. Asbestosis is regarded as a latent disease or injury as well. See Owens—Illinois, Inc. v. Edwards, 573 So.2d 704, 706-07 (Miss.1990). The City’s position is that Sandifer was never formally diagnosed with asbestosis. We do not find whether Sandifer was specifically diagnosed with asbestosis determinative of this issue.

. The City also argues that "reversal is mandated” in this case because Dr. Studdard’s medical testimony fails under Mississippi Rule of Evidence 702 and Daubert v. Merrell Dow Phannaceuticals, Inc., 509 U.S. 579, 593, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). However, the City makes this argument for the first time on appeal. It is well known that appellate courts will not consider issues raised for the first time on appeal. Anglin v. Gulf Guar. Life Ins. Co., 956 So.2d 853, 864 (¶ 26) (Miss.2007). Notwithstanding this fact, the argument fails on the merits.

. See Corrosion Proof Fittings v. E.P.A., 947 F.2d 1201, 1207-08 (5th Cir.1991) (explaining in 1989 the U.S. Environmental Protection Agency promulgated a ban on most commercial uses of asbestos).