# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-WC-00930-COA

ANGELA JONES                                                                 APPELLANT

v.

MISSISSIPPI BAPTIST HEALTH SYSTEMS                          APPELLEES
INC. AND MISSISSIPPI BAPTIST HEALTH
SERVICES

| | |
|---|---|
| DATE OF JUDGMENT: | 06/06/2018 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEY FOR APPELLANT: | GILSON DAVIS PETERSON |
| ATTORNEYS FOR APPELLEES: | ANDREW D. SWEAT |
| | JENNIFER HUGHES SCOTT |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND REMANDED - 06/25/ 2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**McCARTY, J., FOR THE COURT:**

¶1.     This case is before the Court on appeal from an order the Mississippi Workers' Compensation Commission entered. Angela Jones alleges she was injured when her back "pop[ped]" while pushing a medicine cart during her nursing shift at Baptist Hospital. In an evidentiary hearing, the Administrative Judge (AJ) found that Jones sustained a compensable work-related injury. Mississippi Baptist Health Systems petitioned the Mississippi Workers' Compensation Commission for review. The Commission reversed the AJ's order and determined that Jones did not sustain a compensable work-related injury. Aggrieved, Jones now appeals the Commission's decision.

**FACTS**

¶2.     Jones worked as registered nurse for Baptist Hospital for fourteen years. Jones testified that on March 21, 2015, she was pushing a medicine cart during her shift when she felt a "pop" in her right lower back. She then felt a burning sensation going down her right thigh. Jones asked the only witness to the event, her charge nurse, Theresa Blanton, if she too heard the "pop." Blanton said she did not. However, Blanton did testify that Jones's behavior changed and that she was visibly in pain and limping afterward.

¶3.     Two days later Jones sought treatment from her family physician, Dr. Larry Sivils. On the patient information sheet at Dr. Sivils' office, Jones circled "no" when asked whether the visit was related to an injury. When the information sheet asked about the date and cause of the injury, Jones marked through the corresponding blanks with two lines and added a question mark. On his notes for this visit, Dr. Sivils documented that Jones "denie[d] direct injury."

¶4.     That same day, Jones emailed the nurse manager, Jamie Hill, informing him of her condition. In the email she wrote she "started having trouble on Tuesday last week with [her] leg, but Friday night it was hurting a lot." She also informed Hill that her leg problem began after her back started hurting and a "pop" in her lower back the week before.

¶5.     Jones then sought treatment from Dr. Eric Amundson. On the patient history form Jones circled "no" and added a question mark in response to whether she sustained an injury and to whether the problem was due to an on-the-job injury. She also added a question mark on the section asking how she was injured. In his notes for that visit, Dr. Amundson

2

documented "nine days ago patient reports developing right buttock and hip pain with radiation into her lateral thigh and anterior thigh . . . her pain progressed significantly six days ago . . . she denies any precipitating event." Dr. Amundson then referred Jones for an MRI.

¶6.    Jones then saw Dr. Edwin Dodd. On her patient forms Jones wrote "at work, not an accident," "pain just began, I can't relate it to anything," and "progressive for years." She noted on the form that her pain was "progressive after several shifts in a row, overtime was at work." Jones responded in the negative to whether her pain or injury was a workers' compensation case. Dr. Dodd's notes indicate that Jones described "an approximate five-to-six year history of low back pain, which has been intermittently problematic . . . . [S]he began experiencing some new onset of moderate low back pain and right lower extremity radiation approximately two weeks ago without any obvious precipitating event."

¶7.    Jones consulted with Dr. James Woodall for a second opinion regarding her symptoms. On her patient history form Jones again marked "no" when asked whether her condition was a work injury. Dr. Woodall's notes indicate Jones told him that her pain was ongoing but had worsened over the last two months.

¶8.    Five months after the injury Baptist Hospital approved Jones's request for FMLA leave. Two months after approving the FMLA Jones emailed a Baptist Hospital representative indicating that her injuries were related to pushing the medicine cart during her nursing shift. Baptist then initiated the process for investigating a worker's compensation claim.

3

¶9. In a letter to Baptist Hospital, Dr. Woodall wrote that he did not see "anything on her imaging that I could definitively say appeared acute, and it would be difficult for [him] to relate that."

¶10. Dr. Woodall testified that Jones's June 3, 2016 visit was the first time she had provided him with a history of pain starting with a "pop" in her back that day at work. He further testified that he could not "with reasonable probability" say that the condition for which he treated Jones resulted from the injury she suffered that day.

¶11. An evidentiary hearing was held before an administrative judge to determine whether Jones sustained a compensable, work-related injury. The AJ found Jones to be credible and that a preponderance of the evidence supported a finding that she sustained a compensable, work-related injury. Baptist Hospital appealed this decision with the Mississippi Workers' Compensation Commission. The Commission found that Jones did not present sufficient medical evidence to support her claim and entered an order reversing the AJ.

## STANDARD OF REVIEW

¶12. This Court is authorized to review all questions of law and fact from an appeal of the Mississippi Workers' Compensation Commission. Miss. Code Ann. § 71-3-51 (Supp. 2011). Great deference is afforded to the findings of the Commission, and such findings will not be disturbed when they are supported by substantial evidence. *City of Jackson v. Sandifer*, 125 So. 3d 681, 686 (¶19) (Miss. Ct. App. 2013). However, where the Commission's application of the law is in error, this Court will not hesitate to reverse. *Beverly Healthcare v. Hare*, 51 So. 3d 223, 229 (¶18) (Miss. Ct. App. 2010). When the Commission "fails to carry out the

4

beneficent intent and purpose of the Workers' Compensation Act," such an error in law has occurred. *Id*.

## ANALYSIS

¶13. To establish a claim under workers' compensation law, a claimant must prove by a preponderance of the evidence that (1) there was an accidental injury, (2) arising out of and in the course of employment, and (3) there is a causal connection between the injury and the claimed disability. *City of Jackson*, 125 So. 3d at 688 (¶27).

¶14. The issue in this appeal is whether the Commission correctly applied the law when it disregarded Jones's testimony in determining that she did not sustain a compensable and work-related injury during her nursing shift at Baptist Hospital.

¶15. "The Workers' Compensation Act is to be construed liberally in favor of claimants." *Union Camp Corp. v. Hall*, 955 So. 2d 363, 371 (¶36) (Miss. Ct. App. 2006). Doubtful cases should be resolved in favor of compensation. *Id.* "Based on the 'broad policy considerations undergirding the Workers' Compensation Act and the liberal construction to be given the compensation statutes,' the injured worker should prevail when the evidence is 'even.'" *Id*.

¶16. A claimant's testimony generally ought to be accepted as true unless that testimony is disputed or so unreasonable as to be unbelievable. *Waffle House v. Allam*, 976 So. 2d 919, 921 (¶10) (Miss. Ct. App. 2007). Our Supreme Court has held that evidence not affirmatively contradicted and not "inherently improbable, incredible, or unreasonable" cannot be arbitrarily and capriciously discarded. *Morris v. Landsell's Frame Co.*, 547 So. 2d 782, 785 (¶5) (Miss. 1989). Further, unless shown to be untrustworthy, the uncontradicted evidence

is to be taken as conclusive and binding. *Id*. This holds true even for testimony of an interested party. *Id*.

¶17. On the date in question Jones was pushing a medicine cart during her nursing shift at Baptist hospital. While pushing the cart, she felt a "pop" in her right lower back. She then felt a burning sensation going down her right thigh. This was corroborated by the only witness to the event, Blanton. At the moment of injury, Jones even turned to Blanton and asked if she heard her back "pop." Blanton replied that she had not heard the "pop." Blanton later testified that she saw Jones that day limping as if she was hurt. Therefore the uncontested evidence was that Jones suffered an injury while performing her duties as a nurse. The injury was further supported by Blanton's presence and subsequent corroboration. Furthermore, this is similar to other injuries sustained in the nursing field.[1]

¶18. In an analogous case, this Court reversed the Commission's decision to deny a nurse's claim for failure to present substantial and credible evidence. *Beverly Healthcare v. Hare*, 51 So. 3d 223, 230 (¶24) (Miss. Ct. App. 2010). In *Beverly* a nurse was pushing a medicine cart while distributing medication during her shift at a nursing home. *Beverly Healthcare*, at 266 (¶9). At one point she turned toward the cart and heard a "pop like a shotgun." *Id*. Her leg had broken. *Id*.

¶19. The Commission heavily relied on the testimony of the employer and employer's witnesses in its findings. Despite witnesses testifying that they saw the nurse in pain at work

---

[1] *See also Compere's Nursing Home v. Hamlehdary*, 841 So. 2d 154, 155 (¶4) (Miss. Ct. App. 2002) (nurse's back was injured as a result of "jerry chair" breaking while lifting patient).

and the nurse's own testimony, the Commission found in favor of the employer. This Court held that the Commission erred in denying the nurse's claim and that their decision "was not supported by substantial evidence, and the applicable law was not applied." *Id*. at 230 (¶24).

¶20. As in our case, the nurse reported to work that day without an injury. *Id*. The injury occurred while performing her assigned duties. The only matter to be analyzed was whether there was a causal nexus between the injury and the job. A worker has sustained an accidental, on-the-job injury if, "when looking through the eyes of the worker, there is harm to the worker from work-connected activity that either: (a) was from an unexpected event; or (b) was an unexpected result." *Id*. at 231 (¶28). Just as in our case, the nurse's injury was an unexpected result of dispensing medications to her patients. This Court therefore found that the nurse met her burden of proving compensability by substantial evidence. *Id*. at 232 (¶30).

¶21. Jones further testified that she had never injured her low back prior to this injury. She had only previously experienced back pain in relation to her endometriosis. The only other occasion she felt back pain was when working long shifts. Based on our precedent and standard of review, this is sufficient to establish a work-related injury.

¶22. In contrast, the Commission ignored Jones's and Blanton's testimony, citing a failure to present "sufficient medical evidence." The Commission noted that Jones's physicians lack a documented report of an "injury, direct trauma or a specific precipitating event." The Commission also pointed to a recorded history of low back pain in Jones's medical records. Jones's doctors related her back and leg problems to her obesity. Finally, the Commission

7

factored in Dr. Woodall's testimony that he could not "with reasonable probability say that [Jones's] condition is the result of a work related injury."

¶23. The Commission took notes of Jones's failure to report a specific injury to her healthcare providers. Jones visited Dr. Sivils two days after her injury. His records do not mention Jones reporting a "pop" or any other specific incident. Three days later, Jones saw Dr. Amundson. There she completed an intake form where she circled "no" and wrote a question mark when asked if her problems were due to an on-the-job injury.

¶24. This Court is not convinced that Jones understood the meaning of "injury" in which the forms intended. Additionally, Jones's question marks could indicate confusion or uncertainty as to whether her pain was legally classified as an "injury." The evidence is undisputed that she suffered an injury for which she sought treatment, and that the injury arose while she was performing her work duties. Per doctors' orders, Jones stopped working after the incident at work. She was even approved to take FMLA leave due to her inability to continue performing her nursing duties. The fact that Jones did not identify her pain as an "injury" does not contradict her testimony that she was injured -- and certainly not the charge nurse's testimony that she was visibly limping that night.

¶25. The Commission based its decision in part on Drs. Amundson's, Dodd's, and Woodall's opinions relating Jones's back and leg problems in part to her obesity. Even if true, this does not entirely negate a causal connection between Jones's symptoms and her alleged work injury. A pre-existing disease or condition does not prevent an injury from "arising out of employment" if the work-related injury aggravated, accelerated, or combined

8

with a disease to produce a disability for purpose of workers' compensation. *Frito-Lay Inc v. Leatherwood*, 908 So. 2d 175. 178 (¶19) (Miss. Ct. App. 2005). If Jones's employment contributed to her condition, the injury is compensable. *Union Camp Corp. v. Hall*, 955 So. 2d 263, 269 (¶29) (Miss. Ct. App. 2006).

¶26.    The Commission factored Jones's history of low back pain into its decision. Dr. Dodd and Dr. Woodall both noted a history of low back pain for the previous five to six years in Jones's record. Jones told Dr. Dodd that her symptoms developed over time and indicated her symptoms had progressed over five to six years. During her May 8, 2015 visit with Dr. Woodall, Jones reported back pain for quite some time with an increase over the past two months.

¶27.    As noted above, a pre-existing condition does not preclude an injury from arising out of employment. Further, Dr. Woodall's history indicates Jones's pain increased in the two months proceeding the visit. This suggests an increase in pain in March which aligns with the time frame of Jones's allegations.

¶28.    In Dr. Woodall's deposition he opined that he could not, with reasonable probability, say that Jones's conditions was the result of a work injury. However, he did not examine Jones until May 8, 2015, some two months after the alleged injury. During his deposition Dr. Woodall testified that it would have been difficult for him to adduce an acute injury when he did not see Jones in the acute time period following the alleged injury. He also admitted in his deposition and his office notes that Jones's pain was exacerbated by her activities as a nurse.

9

**CONCLUSION**

¶29. Because the evidence presented does not contradict Jones's testimony concerning the mechanism of injury, we find that the Commission erred by disregarding Jones's evidence. This Court hereby reverses and remands.

¶30. **REVERSED AND REMANDED.**

**GREENLEE, McDONALD AND LAWRENCE, JJ., CONCUR. WESTBROOKS AND TINDELL, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. J. WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., AND CARLTON, P.J. C. WILSON, J., NOT PARTICIPATING.**

**J. WILSON, P.J., DISSENTING:**

¶31. There is substantial evidence to support the Commission's finding that Jones did not sustain a compensable work-related injury. Therefore, the Commission's decision must be affirmed. I respectfully dissent.

**I.    Additional Relevant Facts**

¶32. Jones alleges that she suffered a compensable work-related injury on March 21, 2015, when she felt a "pop" in her right lower back while pushing a medical cart. However, Jones did not report a possible work-related injury until October 28, 2015, and substantial evidence from multiple sources supports the Commission's decision that she did not suffer a compensable injury on March 21, 2015.

¶33. Jones testified that around 5 a.m. on Saturday, March 21, 2015, she felt a "pop" in her "right, lower back area" while she was pushing a medical cart at work. Jones testified that "a burning" "went down [her] thigh" "to [her] knee," "[a]nd it was actually some pain in the

10

knee area where there was a difference between the hot and the cold, you know, that leg was hurting." The charge nurse, Teresa Blanton, was nearby, and Jones asked if Blanton if she had heard the "pop." Blanton said that she had not. Blanton asked Jones if she needed medical attention, but Jones declined. Blanton also asked Jones if she needed help with her patients, but Jones again declined and continued working her shift.

¶34. Jones did not report the incident in "Risk Man," Baptist's risk management system. Jones had been trained on how and when to use Risk Man, and she acknowledged that Baptist's policies required her to report an on-the-job injury in Risk Man. However, she testified that she did not record the incident because she "did not realize that it was an injury or something to put into the Risk Man system."

¶35. Jones finished her shift, which ended at 7 a.m., and then went home. Jones did not seek medical attention on March 21 or March 22.

¶36. On Monday, March 23, 2015, Jones emailed her supervisor, Jamie Hill, stating:

> I started having trouble on Tuesday last week with my leg, but Friday night it was hurting a lot. It has continued to hurt badly thru the weekend and I have a MD appt this morning. It is . . . sharp and very painful going from my hip on right leg down with a sharp pain to my knee. This . . . leg problem is post my back hurting and a "pop" in my lower back last week.

Thus, Jones indicated to her supervisor that she began having leg pain four days *before* her alleged work-related injury.

¶37. Later the same day, Jones saw Dr. Larry Sivils. Dr. Sivils noted that Jones reported pain in her right leg from her hip to her knee. However, she reported no lower back pain. She also "denie[d] any direct injury." On her patient information form, in response to the

11

question, "Is visit related to an injury?," Jones circled "No." Jones wrote in question marks on lines for information about the date of the injury and nature of the injury (i.e., "Auto," "Work," or "Other"), but she then struck through the question marks, leaving those lines blank. Dr. Sivils released Jones to return to work on March 25, 2015, on "Regular Duty" with no restrictions.

¶38. Later on March 23, 2015, Jones emailed Hill to state that she could not work the following night. She said, "Hopefully it is just a sciatic nerve inflammation . . . ." She also stated that she intended to return to work by Friday.

¶39. On Thursday, March 26, 2015, Hill saw Dr. Eric Amundson. Her "chief complaint" was "lower right extremity pain." Dr. Amundson noted, "Nine days ago, the patient reports developing right buttock and hip pain with radiation into her lateral thigh and anterior thigh. . . . Her pain progressed significantly six days ago." In other words, consistent with Jones's earlier email to Hill, Jones told Dr. Amundson that her pain began on Tuesday (March 17) and progressed on Friday—prior to the alleged work-related injury on Saturday morning. Dr. Amundson further noted that Jones "denie[d] any precipitating event."

¶40. Dr. Amundson scheduled Jones for an MRI on March 27 "to evaluate for any L3 or L4 compressive nerve root pathology that may explain her symptoms." Dr. Amundson also stated that "[h]igh on the differential diagnosis is also meralgia paresthetica which is frequently seen in obese patients due to [femoral cutaneous nerve] compression." Dr. Amundson recommended "an aggressive weight loss regimen including decreased caloric intake."

12

¶41.    On the patient history form that she completed for Dr. Amundson, Jones circled "No" in response to the question whether she had "sustain[ed] an injury," although she did write a question mark to the side.  Jones's patient information form asked her to provide a date of injury and additional information if her treatment related to "workers' comp or injured on the job."  However, Jones left that section blank.

¶42.    Jones saw Dr. Amundson again following her MRI, and he referred her to Dr. Edwin Dodd for treatment for pain.  Jones saw Dr. Dodd on April 7, 2015.  Dr. Dodd noted that the MRI showed a herniated disc at the L1-L2 level and other mild herniations.  Dr. Dodd's report stated that Jones "describe[d] an approximately five-to-six-year history of lower back pain."  Dr. Dodd further stated that Jones "began experiencing some new onset of moderate low back and right lower extremity radiation approximately two weeks ago without any obvious precipitating event."

¶43.    Jones completed a "pain evaluation" form at Dr. Dodd's office.  In response to the question, "Under what circumstances did the pain begin?"  Jones checked two options: "At work, not an accident" and "Pain just began, I can't relate it to anything."  She did not check "Accident at Work."  Jones further wrote that her pain had been "[p]rogressive after several shifts in a row, over time, was at work."  However, when asked for an "approximate date that [she] first experienced the pain for which [she was] seeking help," she wrote, "?" and "Progressive for years."

¶44.    Later on April 7, 2015, Jones emailed Hill[2] to inform him that Dr. Dodd wanted her

_____

    [2] Jones had also emailed Hill with updates on March 31 and April 3.

13

to remain off work again the next day, but Dr. Dodd had "assure[d]" her that she could return to work on Friday, April 10, 2015. Hill responded that Jones "need[ed] to contact [human resources] concerning FMLA" (i.e., leave under the federal Family and Medical Leave Act). Hill stated that he was "suppose[d] to instruct employees to call HR regarding FMLA" if they were out ill for at least three days. Jones subsequently contacted HR and determined that FMLA leave was unnecessary at that time.

¶45.    Jones continued to work for Baptist in April and May, although she took off some time for medical treatment. However, her pain did not resolve, so she sought a "second opinion" from Dr. Woodall, an orthopedic surgeon with whom she had worked at Baptist. Jones first saw Dr. Woodall on May 8, 2015. Jones claims that she told Dr. Woodall that her pain stemmed from an injury at work. However, Dr. Woodall's May 8, 2015 office notes make no mention of such a report. Moreover, Dr. Woodall testified in his deposition that he did not recall Jones ever claiming to have been injured at work. Dr. Woodall's subsequent notes from June 18, August 7, September 23, and November 9 also make no mention of a work injury. Dr. Woodall testified that if Jones had told him that her pain was related to some specific event or injury, such as she alleges in this case, he would have recorded that information in his notes.

¶46.    Jones continued to work at Baptist in June, July, and August 2015, although she also continued to miss some days of work. Jones also continued to send emails to Hill and Brandy Bowlin in Baptist's HR department to update them on her condition. None of these emails suggested that Jones's physical problems were in any way attributable to a work-

14

related injury. By August, Jones had exhausted her available accrued leave and went on twelve weeks of FMLA leave. Jones's FMLA leave was schedule to run out on November 9, 2015. During September and October, Jones exchanged several emails with Bowlin to inquire whether it would be possible for her to return to work on "light duty" after her FMLA leave ended.

¶47. On October 21, 2015, Jones sent an email to Bowlin in which she stated, for the first time, that "[w]hen this"—i.e., her injury—"occurred, [she] was at work at Baptist." Bowlin and Hill both testified that this was the first they had heard of any claim that Jones had sustained a work-related injury. Bowlin responded, "I was not aware until this email today that this even could be an on the job injury or may even qualify for workers' comp." Bowlin directed Jones to another Baptist employee, Denise Hux, for questions about workers' compensation, and Jones began inquiring about making such a claim. Jones later obtained counsel and filed a petition to controvert.

¶48. On November 17, 2015, a nurse case manager for Baptist's workers' comp carrier sent Dr. Woodall an inquiry regarding Jones's condition and prognosis. In response, Dr. Woodall opined that Jones's then-current diagnosis was *not* "causally related to her alleged work incident" in March 2015. Dr. Woodall wrote that there was "no specific acute pathology to support" that claim. He wrote that Jones's pain "multifactorial with disc disease, obesity, [and] deconditioning all contributing to her pain."

¶49. Dr. Woodall later testified by deposition that Jones's March 27, 2015 MRI disclosed no evidence of an "acute event" that would support Jones's claim of a work-related injury.

15

In his deposition testimony, Dr. Woodall confirmed that he believed that Jones's pain was more likely caused by degenerative disc disease and other factors rather than any work-related event. Jones did not offer any testimony to contradict Dr. Woodall's conclusions.

## II. Analysis

¶50. Our standard of review in workers' compensation cases is limited. "Our task is not to second guess the factual conclusions of the Commission . . . ." *Levy v. Miss. Uniforms*, 909 So. 2d 1260, 1265 (¶16) (Miss. Ct. App. 2005). "This Court's review is limited to determining whether the Commission's decision was supported by substantial evidence, was arbitrary and capricious, was beyond the scope or power of the agency to make, or violated . . . constitutional or statutory rights. . . . [T]he Commission is the ultimate fact-finder and judge of the credibility of witnesses; therefore, we may not reweigh the evidence that was before the Commission." *Pulliam v. Miss. State Hudspeth Reg'l Ctr.*, 147 So. 3d 864, 868 (¶16) (Miss. Ct. App. 2014) (citations and quotation marks omitted). "We defer to the Commission's decision and reverse only when the Commission's decision is not supported by substantial evidence." *Cook v. Home Depot*, 81 So. 3d 1126, 1128 (¶7) (Miss. Ct. App. 2011), *aff'd*, 81 So. 3d 1041 (Miss. 2012). "This remains true even though we might have reached a different conclusion were we the trier of fact." *Parker v. Ashley Furniture Indus.*, 164 So. 3d 1081, 1084 (¶11) (Miss. Ct. App. 2015) (quoting *Smith v. Johnston Tombigbee Furniture Mfg. Co.*, 43 So. 3d 1159, 1164 (¶15) (Miss. Ct. App. 2010)).

¶51. Stated differently, once this Court determines that the Commission's decision is supported by substantial evidence, it is irrelevant that a different outcome might "also be

supported by substantial evidence." *United Funeral Homes, Inc. v. Culliver*, 240 Miss. 878, 882, 128 So. 2d 579, 580 (1961). In a workers' compensation case, there may be "substantial evidence" both in support of the claim and in opposition to it. *Georgia-Pacific Corp. v. Veal*, 484 So. 2d 1025, 1027-28 (Miss. 1986). In such cases, the Commission will be "justified in either finding." *Id.* "The Commission is in the same position as a jury, which might have brought in a verdict for either the plaintiff or the defendant, and where the jury has enough evidence to justify its findings the court affirms the case." *Id.* at 1027.

¶52. In this case, the Commission denied Jones's claim after finding that "the medical evidence presented does not support [Jones's] assertion that she sustained a compensable, work-related injury." The Commission's finding and decision are supported by substantial evidence and therefore must be affirmed.

¶53. To begin with, although Jones now claims that her pain is the result of an injury (a back "pop") at work, she did not report a work-related injury to Hill (her supervisor) or to Baptist's HR department for more than seven months after the alleged injury. Even though she discussed FMLA leave with Baptist's HR department and ultimately went on FMLA leave in August 2015, Jones did not report a possible work-related injury until October 2015. In addition, Jones treated with four different doctors during this period, but none of her patient information forms or the doctors' notes identifies a specific work-related injury as a possible cause of her pain. Further, none of these doctors noted that Jones had mentioned any sort of back "pop" to them. Jones's failure to claim a work-related injury from March to October 2015 is certainly a reasonable basis for the Commission to question her claim that

17

she sustained such an injury. *See Anthony v. Town of Marion*, 90 So. 3d 682, 686, 690-91 (¶¶12, 24-26) (Miss. Ct. App. 2012) (holding that the Commission did not err by considering claimant's failure to report an alleged work-related injury for three months as part of the totality of the relevant evidence).

¶54. Moreover, two days after the alleged work-related incident, Jones advised Hill that her pain began on Tuesday—four days before the alleged injury. She provided the same information to Dr. Amundson a few days later. Dr. Amundson also reported that Jones "denie[d] any precipitating event." Less than two weeks later, Dr. Dodd similarly reported that Jones had "describe[d] an approximately five-to-six-year history of lower back pain" and "began experiencing some new onset of moderate low back and right lower extremity radiation approximately two weeks ago without any obvious precipitating event." All of this evidence permits a reasonable inference that Jones's difficulties began several days *before* the alleged injury at work. The Commission reasonably could have found that whatever precipitated Jones's pain in March 2015 occurred several prior to the alleged incident at work—and that, at most, Jones experienced continuing pain while at work.

¶55. Finally, the Commission was entitled to credit Dr. Woodall's testimony and conclusions. Dr. Woodall testified that he treated Jones from June to November 2015, but Jones never mentioned a back pop or told him that her pain was caused by any work-related injury. Dr. Woodall's testimony was supported by his own contemporaneous notes, which showed no mention of a work-related injury. In addition, Dr. Woodall testified that he did not believe that Jones's present pain is attributable to any work-related injury. Rather, he

18

attributed her present difficulties to degenerative disc disease, obesity, and other factors. Jones did not offer any testimony or other medical evidence to contradict Dr. Woodall's conclusions. Indeed, the notes and records of Dr. Amundson and Dr. Dodd generally support Dr. Woodall's conclusions. Certainly, the Commission was entitled to credit Dr. Woodall's testimony. *See, e.g.*, *Ware v. Hillcraft Furniture*, 724 So. 2d 512, 516 (¶33) (Miss. Ct. App. 1998) ("As finder and trier of fact in a workers' compensation claim, the Commission was charged with evaluating and weighing all the medical evidence.").

¶56.    To be clear, neither Dr. Woodall's testimony nor any other medical evidence shows that a work-related incident on March 21, 2015, caused a new injury or aggravated any preexisting condition. As stated, Dr. Woodall concluded that Jones's condition was most likely attributable to her preexisting degenerative disc disease and other factors and not to any work-related incident. While Jones did testify that she experienced a sharp pain while at work, "that is not the same as saying that [her] condition was aggravated. *Pain is a symptom of an injury; that the pain worsens with certain activity does not mean the activity is increasing the injury but only that the activity is painful as a result of the injury*." *United Methodist Senior Servs. v. Ice*, 749 So. 2d 1227, 1232 (¶21) (Miss. Ct. App. 1999) (emphasis omitted; emphasis added); *see also Wright v. Turan-Foley Motors Inc.*, 269 So. 3d 160, 168 (¶¶31-32) (Miss. Ct. App. 2018) (affirming Commission's finding that claimant failed to prove a compensable injury based on doctor's testimony that claimant's work caused pain and swelling but no permanent aggravation of the underlying conditions). Stated simply, an employee does not sustain a compensable work-related injury just because he or she

experiences pain from a preexisting condition while on the job.

¶57. Thus, the Commission also did not clearly err when it found that "the medical evidence presented does not support [Jones's] assertion that she sustained a compensable, work-related injury." "In all but the simple and routine [workers' compensation] cases it is necessary to establish medical causation by expert testimony. . . . Medical evidence must prove not only the existence of a disability *but also its causal connection to employment*." *Clark v. Spherion Corp.*, 11 So. 3d 774, 778 (¶16) (Miss. Ct. App. 2009) (emphasis added; citations, quotations marks, brackets, and ellipsis omitted). Here, there is no medical evidence to connect Jones's back pain to anything that occurred during her employment at Baptist.

¶58. With all respect, the majority is able to reverse only by substituting its judgment for that of the Commission. *But see, e.g.*, *Raytheon Aerospace Support Servs. v. Miller*, 861 So. 2d 330, 335 (¶11) (Miss. 2003) (reiterating that a reviewing court may *not* substitute its judgment for that of the Commission). Indeed, despite an abundance of evidence contradicting or casting doubt on Jones's claim, the majority holds that the Commission was required to accept Jones's own claim that her back "pop" constituted a compensable injury. It is unnecessary to address all of the arguments in the majority opinion, but two parts of the opinion warrant brief comments.

¶59. First, the majority relies heavily on *Beverly Healthcare v. Hare*, 51 So. 3d 223 (Miss. Ct. App. 2010), calling it "[a]n analogous case." *Ante* at ¶18. It is not. The majority apparently sees the two cases as similar because *Beverly Healthcare* also involved a nurse

20

who heard a "pop" while pushing a medicine cart. *Ante* at ¶18. But that is where the similarities in the cases end. The nurse in *Beverly Healthcare* testified that she heard a "pop" "like a shotgun," and the undisputed evidence showed that she had *broken her femur* while she was performing the ordinary duties of her job. *Beverly Healthcare*, 51 So. 3d at 231-32 (¶29). That is a far cry from this case where there is substantial evidence that Jones did not experience any injury at work but, at most, experienced some pain from a degenerative condition that apparently flared up four days earlier.[3] Suffice it to say, *Beverly Healthcare* does not establish a per se rule that a claimant who testifies to hearing a "pop" while pushing a medicine cart always wins.

¶60. A second major problem with the majority opinion is that it is based on a clear misstatement of current law. The majority asserts that the Commission's decision is legally erroneous because it "fails to carry out the beneficent intent and purpose of the Workers' Compensation Act." *Ante* at ¶12 (quoting *Beverly Healthcare*, 51 So. 3d at 229 (¶18)). Later, the majority opinion states:

> "The Workers' Compensation Act is to be construed liberally in favor of claimants." *Union Camp Corp. v. Hall*, 955 So. 2d, 363, 371 (¶36) (Miss. Ct. App. 2006) (internal citations omitted). Doubtful cases should be resolved in favor of compensation. *Id.* "Based on the 'broad policy considerations undergirding the Workers' Compensation Act and the liberal construction to be given the compensation statutes,' the injured worker should prevail when the evidence is 'even.'" *Id.*

---

[3] The majority opinion states that this case is like *Beverly Healthcare* because Jones "reported to work" on March 20-21, 2015, "without an injury." *Ante* at ¶20. The majority ignores that there is evidence to the contrary. As discussed above, Jones told Hill and Dr. Amundson that she had been experiencing pain in her leg for four days prior to her alleged work-related injury, and Dr. Woodall attributed Jones's present pain to her preexisting degenerative back disease.

21

*Ante* at ¶15.

¶61.    None of that is the law anymore.  Effective July 1, 2012, the Legislature amended the Act to provide: "notwithstanding any common law or case law to the contrary, this chapter shall not be presumed to favor one party over another and shall not be liberally construed in order to fulfill any beneficent purposes."  Miss. Code Ann. § 71-3-1(1) (Supp. 2018); *see* Miss. Gen. Laws 2012, Ch. 522, § 1.  Thus, the principles on which the majority relies have "been legislatively abolished . . . for injuries occurring on or after July 1, 2012." *Howard Indus. Inc. v. Hardaway*, 191 So. 3d 1257, 1262 n.2 (Miss. Ct. App. 2015), *cert. denied*, 202 So. 3d 208 (Miss. 2016); *see also Cook v. Neshoba Cty. Gen. Hosp.*, 139 So. 3d 131, 133 n.2 (Miss. Ct. App. 2014) (recognizing the same).  The majority opinion simply ignores this clear change to the law.  That is not our prerogative.  As our Supreme Court has explained,

> The Mississippi Workmen's Compensation Law was adopted by the Legislature in the exercise of the legislative power vested exclusively in it under Article 1, Section 1 of the Constitution of 1890.  In order to preserve the separation of powers mandated by the Constitution, any amendments to the Workmen's Compensation Law or any public policy determinations of the law, likewise are vested exclusively in the Legislature.

*Kelly v. Miss. Valley Gas Co.*, 397 So. 2d 874, 877 (Miss. 1981).

¶62.    To be clear, the outcome of this does not depend on the 2012 amendment to the statute.  There is ample evidence to support the Commission's decision no matter how "liberally" the law is construed in favor of Jones.  Nonetheless, we are bound to follow and apply the law as it is written.

        **III.    Conclusion**

¶63.    The Commission's decision must be affirmed because it is supported by substantial,

22

competent evidence from multiple sources.  I respectfully dissent.

**BARNES, C.J., AND CARLTON, P.J., JOIN THIS OPINION.**